350 So.2d 1181 (1977)
STATE of Louisiana
v.
Sabrina PROGUE.
No. 59618.
Supreme Court of Louisiana.
October 10, 1977.
Frank E. Brown, Jr., Piper & Brown, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Stephen A. Glassell, Asst. Dist. Atty., for plaintiff-appellee.
*1182 MARCUS, Justice.
Sabrina Progue was charged by bill of information with the crime of attempted second degree murder. La.R.S. 14:27; La. R.S. 14:30.1. After trial by jury, defendant was found guilty of attempted manslaughter and was sentenced to serve ten years at hard labor. On appeal, defendant relies on three assignments of error for reversal of her conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial judge erred in refusing to give four requested special charges to the jury and in refusing to charge the jury on the law of justification as expressed in La.R.S. 14:18(6). She further argues that the trial judge erred in his general charge to the jury by failing to instruct the jury that, in order to find defendant guilty of attempted second degree murder, the jury must conclude that the defendant had the specific intent to kill.
Defendant's contention that the trial judge's general charge to the jury was defective in its failure to instruct the jury with respect to the specific intent needed for attempted second degree murder is without merit. Defendant made no objection to the general charge. This court has consistently held that, absent a contemporaneous objection, a defendant may not on appeal complain of the trial judge's charge to the jury. La.Code Crim.P. art. 841; State v. Roche, 341 So.2d 348 (La.1976); State v. Smith, 339 So.2d 829 (La.1976); State v. Charles, 326 So.2d 335 (La.1976); State v. Mitchell, 319 So.2d 357 (La.1975). Moreover, under La.Code Crim.P. art. 920, a defect in the general charge is not an error "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." State v. Mitchell, supra.
The record does not reflect that defendant requested that the trial judge charge the jury on the law of justification as expressed in La.R.S. 14:18(6). Consequently, her contention that the trial judge erred in refusing to so instruct the jury is of no merit. Moreover, defendant made no objection to the general charge.
The first of the four special charges for the jury submitted by defendant to the court provided: "That it is conceivable, that a deadly weapon may be used with a specific intent to seriously injure or frighten, rather than to attempt to murder." As written, the special charge requires explanation that a specific intent to kill is an essential element of the crime of attempted murder. Under La.Code Crim.P. art. 807, a requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. Since the special charge required explanation, the trial judge properly refused to give it.
The second charge submitted by defendant to the court provided:
That intent need not be proved as a fact but may be inferred from the circumstances of the transaction, if the defendant is engaged in the perpetration of certain enumerated offenses, no specific intent need be established, R.S. 14:30.1, there is however, no allegation of any other offense in the bill of information filed in this case.
The trial judge's general charge to the jury included an instruction that intent, although a question of fact, need not be proved as a fact but may be inferred from the circumstances of the transaction. Hence, the first part of the requested special charge was included in the general charge. Defendant was charged under the specific indictment form for attempted second degree murder listed in La.Code Crim.P. art. 465; therefore, it was unnecessary to set forth the various ways in which the crime could be committed under the statute. The general charge properly included the full text of the crime of second degree murder as set forth in La.R.S. 14:30.1. Hence, this portion of the requested special charge required further explanation. In sum, since the requested special charge was partly included in the general charge and partly required further explanation, it was properly refused by the trial judge. La.Code Crim.P. art. 807.
*1183 The third and fourth requested special charges provided:
That a person will not be held criminally responsible if he or she acts in self-defense from real and honest convictions as to the character of the danger, induced by reasonable evidence, though he or she may be mistaken as to the extent of the actual danger.
That in an attempted second degree murder case, the plea of justification does not place upon the accused the burden of proving it, nor change the duty of the State to prove the accused's guilt beyond a reasonable doubt by demonstrating that the attempted second degree murder was not justifiable.
At trial, Joseph Giglio, Jr., the 68-year-old victim of the crime, testified that on the afternoon of September 14, 1976, defendant came to the grocery store which was owned and operated by him and his wife to buy some fruit and stamps. At the time, Giglio was in the store by himself; his wife was attending a meeting. About ten minutes later, defendant returned to the grocery store and purchased a candy bar and some cigarettes. Giglio denied that he touched defendant or spoke with her. Approximately fifteen minutes later, after Giglio's wife had returned to the store from her meeting, defendant re-entered the grocery with a .22 caliber pistol in her hands. She pointed the gun with both hands at Giglio, told him and his wife that it was a "stick up" and fired one shot at close range at Giglio's face. He was hit in the face and the bullet exited behind his ear. After the shooting, defendant turned and ran out of the store. The testimony of Mrs. Giglio corroborated that of her husband.
Defendant took the stand in her own defense and testified that on her second visit to the store, Giglio propositioned her and touched her on her "posterior." After rejecting his advances, defendant turned to leave the store, at which time Giglio grabbed her by the shoulder tearing her dress and vowed that he would get her no matter what. Defendant ran from the store to her home and removed a .22 caliber pistol from her mother's purse. She returned to the store where she found Giglio and his wife, pointed the gun at Giglio and shot him in the face as he reached for a jar of water. Defendant testified that, although she intended to shoot Giglio, she did not intend to kill him. She stated that, while she was really mad at Giglio, she did not shoot him for that reason, but rather because she considered that she had no choice since he had stated that he was going to get her no matter what. After the shooting, defendant ran home and returned the gun to her mother's purse. She was arrested later that day and was questioned by Detectives Sherrill Smith and Michael Sullivan, who testified that defendant freely confessed that she shot the victim.
The third requested special charge covers the law of self-defense;[1] the fourth requested special charge deals with the state's burden of proof where justification is asserted as a defense.
It is well settled that, where a defendant makes a request for special instructions to the jury, they must be such as are correct under the statement of facts as disclosed by the evidence. State v. Selman, 300 So.2d 467 (La.1974), vacated in part, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976); State v. Rone, 222 La. 99, 62 So.2d 114 (1952); State v. Capaci, 179 La. 462, 154 So. 419 (1934); State v. Burch, 170 La. 812, 129 So. 212 (1930). Under La.Code Crim.P. art. 807, a special charge should be given by the court if it does not require qualification, limitation, or explanation and if it is wholly correct and pertinent.
In the instant case, no evidence existed that defendant acted in self-defense in shooting the victim. Defendant returned to the grocery store after Giglio had allegedly propositioned her earlier in the day and *1184 deliberately shot him in the face. Defendant testified that she shot him because he had stated to her on her prior visit to the store that he was going to get her no matter what. No pretense was made in her testimony or any other evidence adduced at trial that she shot defendant in self-defense. The single reference to Giglio's reaching for a jar of water was made in her description of Giglio's actions after she appeared in the grocery store and pointed the gun at him. Accordingly, since the third and fourth requested special charges were not correct and pertinent, the trial judge properly refused to give them. La.Code Crim.P. art. 807.
In sum, Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial judge erred in denying her motion for a new trial on the grounds previously considered in Assignment of Error No. 1. For the reasons assigned therein, Assignment of Error No. 2 lacks merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends that the sentence imposed in this case, imprisonment for ten years at hard labor, inflicts cruel, excessive, or unusual punishment in violation of La.Const. art. 1, § 20. Objection to the sentence on the ground of excessiveness was raised by defendant when the sentence was imposed.
La.Const. art. 1, § 20 provides in pertinent part:
. . . No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. . . . (Emphasis added.)
Some of the members of this court, including the author of this opinion, are of the view that this constitutional provision only gives to this court the judicial power to declare as unconstitutional laws which provide for excessive sentences rather than extending the judicial power to appellate review of sentences imposed in individual cases. Other members of the court interpret the provision as conferring upon this court constitutional authority to review sentences imposed in individual cases. However, we need not resolve this issue in the present case for, under either interpretation of the constitutional provision, the sentence imposed here is not excessive. In view of the fact that, by her own admission, defendant deliberately shot the victim in the face, the sentence of imprisonment at hard labor for ten years imposed on defendant is not excessive.
Assignment of Error No. 3 is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., concurs in part and dissents in part, and assigns reasons.
TATE, Justice (concurring in part, dissenting in part).
The writer concurs in the conviction. He respectfully dissents from our affirmance of the imposition of the maximum sentence for the offense, which on its face appears to be excessive, under the circumstances, and was rendered without benefit of a pre-sentence investigation.
The defendant is undoubtedly guilty of the crime charged, attempted manslaughter, La.R.S. 14:27, 31. The maximum sentence for this crime is 10½ years. The defendant was sentenced to ten years at hard labor.
The defendant is a 17-year-old girl, having completed her junior year at high school. She has no previous juvenile or criminal record. Her version of the incident, apparently accepted by the trial jury,[1] *1185 is that, a few minutes earlier, the grocery store owner had sexually handled her and ripped her dress and had threatened her because she did not engage in sexual relations with him. She immediately went home and got a .22 pistol and came back and shot the store owner (a much heavier and older man) in the side of his face.[2]
This version, of course, does not mitigate her guilt of the crime for which convicted. However, insofar as the jury verdict indicates its veracity, it might indicate assuming no other criminal tendencies or acts that the trial court's sentencing discretion should have been exercised in favor of imposing less than the maximum sentence.
When the motion for a new trial was denied on January 17, defense counsel requested that the court secure a pre-sentence investigation. This involves inquiry into such sentencing factors as, La.C.Cr.P. art. 875 A: "the circumstances attending the commission of the offense, the defendant's history of delinquency or criminality, his family situation and background, economic and employment status, education, personal habits, and other matters deemed relevant by the officer, or ordered investigated by the court."
This request was denied. Four days later, the sentence of ten years was imposed. The defendant's counsel objected that the sentence was "grossly disproportionate to the situation that was involved and we feel it is cruel and unusual punishment; excessive punishment."
The conscientious trial judge apparently felt that the pre-sentence factors were not considerations for sentencing; only the crime of which convicted, was deemed relevant. In the writer's opinion, our trial brother, although dispassionate and sincere in his belief, may not thereby have exercised the discretion in sentencing intended by the legislature.
In my view, Art. 1, Section 20, of our state constitution of 1974, imposes upon this court the duty of reviewing whether a sentence imposed by law subjects a person to excessive punishment, when (as here) the objection to excessiveness is properly raised. State v. Williams, 340 So.2d 1382, 1384 (concurring opinion) (1976).
Apparently, because the face wound might have resulted in death if the accused had aimed to kill, the trial court felt the most severe penalty was required. However, all attempted manslaughter convictions involve a jury finding that, in hot blood, the offender attempted to kill the victim. La.R.S. 14:31. Yet the legislature has entrusted to the trial court a discretion to sentence between one day and 10½ years, or to suspend any sentence imposed.
In my opinion, therefore, at least on the face of this record, the accused has made out a prima facie case that the trial court imposed the (near) maximum sentence based upon the crime alone, without taking into consideration any mitigating or individualized circumstances. The legislature contemplated that these factors are to be considered by a trial court in the exercise of its broad discretion (101 to ½ years) in sentencing for this crime.
The writer is therefore of the opinion that the sentence should be set aside, and the case remanded for re-sentencing by the trial court, to be imposed after pre-sentence investigation affords the trial court information as to pertinent factors properly to be taken into consideration.
Due to the seriousness of the crime [3] and of the injury and the possible fatal consequences *1186 of the accused's act,[4] imprisonment rather than probation or a suspended sentence might reasonably be indicated. However, practically all other factors relating to the accused or to her participation in the crime, as viewed by the jury verdict and possibly to be corroborated by a pre-sentence investigation, indicate a sentence substantially less than the maximum.[5]
Accordingly, I respectfully dissent from our affirmance of the sentence imposed, although I concur in the affirmance of the conviction.
NOTES
[1] At the request of the state and defense counsel, the trial judge included in his general charge to the jury an instruction as to when the use of force or violence upon the person of another is justified as set forth in La.R.S. 14:19. Hence, the third requested special charge was essentially included in the general charge.
[1] In convicting her of attempted manslaughter (an attempted killing in hot blood, immediately caused by provocation, La.R.S. 14:31), a responsive verdict to the attempted second degree murder charged, the jury apparently rejected the complaining witness's version. He testified that the accused entered the store with a gun, told him "this is a stick-up," and without more ado then shot him. She lived a block and a half from the store and was a regular customer.

The investigating police officers testified as to her consistent reiteration of this version, and her willing cooperation with the investigation. After the shooting, the accused went to her nearby home and waited for the police to arrive.
[2] Her torn dress was introduced in evidence in corroboration of her version, as is her mother's testimony of how she came home sobbing and then immediately left again for the store.
[3] By Act 635 of 1977, the legislature enacted La.C.Cr.P. art. 894.1, providing sentencing guidelines. Imprisonment is indicated if "A lesser sentence will deprecate the seriousness of the defendant's crime." 894.1 A(3).
[4] In according suspension or probation, the trial court should give weight to whether the defendant's criminal conduct caused or threatened serious harm. 894.1 B(1). (1977):
[5] See mitigating factors legislatively suggested by La.C.Cr.P. art. 894.1 B(3)-(11) (1977):

"(3) The defendant acted under strong provocation;
"(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
"(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
"(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
"(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
"(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
"(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
"(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
"(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents."