355 So.2d 238 (1978)
STATE of Louisiana
v.
Roy Edward SEGERS.
STATE of Louisiana
v.
Bobby Therral SMITH.
Nos. 60388, 60389.
Supreme Court of Louisiana.
January 30, 1978.
March 3, 1978.
*239 Thomas W. Davenport, Jr., Davenport, Files, Kelly & Marsh, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Walter L. Smith, Jr., Roland T. Huson, III, R. Neal Wilkinson, Asst. Attys. Gen., John T. Seale, Dist. Atty., Thomas F. Wade, Asst. Dist. Atty., for plaintiff-appellee.
Rehearing Granted in No. 60388 and Denied in No. 60389.
For Rehearing Opinion in No. 60388, see 357 So.2d 1.
DIXON, Justice.
Defendants Roy Edward Segers and Bobby Therral Smith were indicted with others by the Tensas Parish Grand Jury for the possession of marijuana with the intent to distribute and conspiracy to distribute marijuana. Segers was tried by jury, found guilty on both counts and sentenced to serve four years imprisonment at hard labor and to pay a fine of $7500 for conspiracy and eight years at hard labor and a fine of $15000 for the possession with intent to distribute. Smith, pursuant to a plea bargain, pleaded guilty to possession with the intent to distribute, reserving his right to appeal the trial court's denial of a motion to suppress physical evidence. (See State v. Hutchinson, 349 So.2d 1252 (La.1977); State v. Lain, 347 So.2d 167 (La.1977); State v. Crosby, 338 So.2d 584 (La.1976)). He was sentenced to serve ten years imprisonment at hard labor and fined $15000. Defendant Segers urges five assignments of error on appeal; defendant Smith, one.
In the evening of April 26, 1976 an off-duty Tensas Parish Deputy Sheriff, Victor Thomas Mahoney, Jr., noticed a large U-Haul truck and car turn onto a road providing access to an area known as "the Island," alongside Lake Bruin. Because there had been several recent burglaries of the camps lining Lake Bruin, Deputy Mahoney was *240 suspicious of the truck and car and decided to follow with his headlights turned off. After losing contact with the truck, Mahoney drove along the camps, shining his spotlight in hope of sighting the truck and car. Earlier that day he had noticed a large airplane parked on an airstrip located on "the Island," so when he came to the entrance of the airstrip he turned to check the plane. There he first noticed a two-door Pontiac that had not been there earlier in the day, parked next to the plane. He took the license number of the car and radioed headquarters for a registration verification. He was told that the license number displayed should be on a four-door car. Becoming more suspicious, Deputy Mahoney drove closer and then noticed a U-Haul truck parked on the other side of the plane. He then radioed for assistance.
Among those answering the call was Trooper Danny Warner of the Louisiana State Police Morehouse-Ouachita Narcotics Strike Force. After discovering marijuana gleanings on the exteriors of the truck and plane and detecting the odor of marijuana, Trooper Warner and Deputy Mahoney flew to St. Joseph, Louisiana to get a search warrant. When they arrived in St. Joseph, they awoke Judge Alwine M. Smith and told her their story. She executed a search warrant authorizing the search of the plane and other vehicles. The subsequent search resulted in the seizure of over three thousand pounds of marijuana. Segers was arrested on April 27, 1976; Smith several days later.
Assignment of Error No. 1 (Segers and Smith)
This assignment was taken to the denial of a motion to suppress the physical evidence (marijuana) seized in the search conducted pursuant to the search warrant. The defendants contend that the search was unconstitutional because the affidavit executed in the application for the warrant was defective in three respects: first, in that it presents an unclear and insufficient recitation of facts on which a finding of probable cause may be based; second, in that the facts recited in the affidavit were subsequently acknowledged to be untrue by the affiant; and third, in that there is no reference to whether the facts are current or whether they are remote in time from the application. The search warrant itself is attacked on grounds that it fails to describe either the property or the place to be searched.
Testimony at the hearing on the motion to suppress reveals that Trooper Warner and Deputy Mahoney told Judge Smith the facts, and then she filled out the "Application for Search Warrant" form. The affidavit reads as follows (the handwritten words by Judge Smith are underlined):
"APPLICATION FOR SEARCH WARRANT
STATE OF LOUISIANA
PARISH OF Madison
BEFORE ME, the undersigned authority, personally came and appeared Danny Warner and Victor Thomas Mahoney. Jr., who each being duly sworn, says:
That he is 26 and 32 years of age respectively, a resident of Monroe. La. and Tensas Parish, respectively  .
That he verily believes that personal property belonging to persons unknown contains a controlled dangerous substance, marijuana and is

(edifice)
possessed by the owners and operators of the vehicles and airplane above described for the purpose of distribution located on the property of Lake Bruin Airport __ in the (city, town, village) of Parish of Tensas. Louisiana; the said property consisting of a white over gold 1973 Grand Prix. VIN # 2K57T3A220601 License LXZ 627. 76 Tex & Airplane Lockheed Lodestar L18--Twin Engine FAA regis # N755A-a Ford Custom 350 U Haul Truck orange & white--1P60776 Ala

1
Affiant further believes that said property or a part thereof is concealed in or about the house of Lake Bruin Airport  on the property of Person's at present unknown, in Tensas on the Highway  That the Deputy Sheriff Victor T. Mahoney. Jr. observed the outside of the aircraft and the outside of the Ford U Haul Truck & it smells strongly of marijuana and has marijuana gleanings on the outside of the truck & plane as if unloaded near or at the truck.
Affiant requested the issuance of a search warrant herein.
s/ TFC Danny A. Warner
 s/ Victor Thomas Mahoney. Jr.
*241 Sworn to and subscribed before me this 26 day of April. 1976.
 s/ Alwine M. Smith 
 JUDGE
 Sixth Judicial District Court
 State of Louisiana."
(Original affidavit reproduced in Appendix).
Defendants contend that the affidavit is so poorly drafted that it is nonsensical and fails to support a finding of probable cause.
In United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the United States Supreme Court set out the following principle:
" . . .If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." 380 U.S. at 108, 85 S.Ct. at 746.
See also United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); United States v. Ford, 180 U.S.App.D.C. 1, 553 F.2d 146 (1977); United States v. Harper, 550 F.2d 610 (10th Cir. 1977); United States v. Harvey, 540 F.2d 1345 (8th Cir. 1976); State v. Williams, 338 So.2d 1365 (La.1976); State v. Roach, 322 So.2d 222 (La.1975).
Defendants argue that this principle is inapplicable to the present affidavit because it was drafted by the judge and therefore must be literally interpreted. We do not agree. It is sufficient that the affidavit shows that the magistrate was informed of the facts and circumstances within the affiants' knowledge upon which a finding of probable cause may reasonably be based.
A commonsense reading of the affidavit before us reveals that the judge was told that the affiants believed that marijuana was hidden in three described vehicles and that they based this belief on the observation of marijuana gleanings on the outside of the vehicles and on the detection of the odor of marijuana in the area. These facts are sufficient to support a finding of probable cause.
Defendants next contend that even if the affidavit demonstrates probable cause to search, it nevertheless must fall because certain facts contained in the affidavit are untrue. Specifically, they point to that portion of the affidavit which recites, "That the Deputy Sheriff Victor T. Mahoney, Jr. observed the outside of the aircraft and the outside of the Ford U Haul Truck & it smells strongly of marijuana and has gleanings on the outside of the truck & plane. . ." At the hearing on the motion to suppress Deputy Mahoney testified that he did not tell Judge Smith that he observed or smelled the marijuana, but rather that Trooper Warner, a narcotics officer, observed those facts.
While it is true that the affidavit may be interpreted in the manner advanced by the defendants, it must be noted that both Mahoney and Warner were affiants. Thus the statement may be interpreted to mean that Warner, as one of the affiants, told of the gleanings and odor. Because the affidavit was written by the judge and any technical inaccuracies could not be the result of intentional police fabrication (see State v. Rey, 351 So.2d 489 (La.1977)), this "inaccuracy" is not fatal to the affidavit.
Defendants' final attack on the affidavit is based on the failure of the affidavit to reflect the time when the observations made by the affiants took place. In State v. Boudreaux, 304 So.2d 343 (La.1974), this court, when faced with the same issue now presented, stated:
"The absence of a date for each episode described in the affidavit is not fatal, however, The language of the affidavit, including the use of the present tense, *242 indicates that the affiants are describing a course of conduct continuing to the date of the warrant. . . .
"Such an affidavit has been held to be adequate if, in a commonsense construction, it can be said from the face of the affidavit that the information received by the affiant was current and not stale. See: Borras v. State, 229 So.2d 244 (Fla.,1969); State v. Clay, 7 Wash.App. 631, 501 P.2d 603 (1973); Sutton v. State, 419 S.W.2d 857 (Tex.Cr.App., 1967); Lewis v. State, 126 Ga.App. 123, 190 S.E.2d 123 (1972). . . ." 304 So.2d at 345-46.
See also State v. Turner, 337 So.2d 1090 (La.1976). Application of these principles to the affidavit in the instant case renders the defendants' argument without merit.
Finally, defendants attack the search warrant itself on grounds that it fails to particularly describe either the place to be searched or the property to be searched. The contention is without merit. The search warrant states that the vehicles located at the Lake Bruin Airport are to be searched because they were being used to conceal marijuana. The license numbers of the vehicles were listed on the back of the search warrant. Testimony at the hearing on the motion to suppress indicates that there are two airports in the Lake Bruin area: one commonly known as the "Lake Bruin Airport" and another known as the "Sun Crop Dusting Airport."
The description contained in a search warrant is adequate if it is sufficiently detailed so as to allow the officers to locate the property with reasonable certainty and with the reasonable probability that they will not search the wrong premises. State v. Cobbs, 350 So.2d 168 (La.1977); State v. Alexander, 337 So.2d 1111 (La.1976). This test is satisfied by the search warrant at issue in the present case.
This assignment is without merit.

Assignment of Error No. 2 (Segers)
In this assignment Segers contends that the trial court erred in denying a motion to suppress an out-of-court photographic identification.
Evidence of the out-of-court identification was not introduced at trial. Therefore, if error, it was harmless.
This assignment is without merit.

Assignment of Error No. 3 (Segers)
On the morning of April 27, 1976 Segers heard a news report of the search of his airplane. He called the Sheriff's Office and was told to meet Sheriff Theo Poe at the airport. Upon arriving at the airport Segers met the Sheriff, shook hands and exchanged pleasantries. Sheriff Poe then asked the defendant whether he owned the plane and Segers replied that it belonged to his corporation, Segers and Associates, Inc. Sheriff Poe next asked Segers whether he had flown the airplane into Tensas Parish. Segers stated that he had not flown the aircraft, but that he had served as a member of the crew. Segers was then arrested and advised of his Miranda rights.
The Sheriff testified at first that he would not have permitted Segers to depart after admitting an ownership interest in the plane, but would not have arrested him for possession of the contraband merely because he owned the plane. Later the Sheriff testified that he didn't know whether Segers would have been permitted to leave and said, "I would have asked him some more questions. He could of course have refused to answer `em." Defendant assigns as error the introduction of the statement into evidence at trial, arguing that his constitutional rights had been violated. In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held:
". . . the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards *243 effective to secure the privilege against self-incrimination. . . ." 384 U.S. at 444, 86 S.Ct. at 1612.
The Court defined "custodial interrogation" as:
" . . . questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . ." 384 U.S. at 444, 86 S.Ct. at 1612.
Since Miranda was decided, numerous cases have endeavored to refine the meaning of "custodial interrogation." (See, e. g., Mathis v. U. S., 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); Beckwith v. U. S., 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976)). In the recent case of Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the Court was faced with the following factual situation:
"`An officer of the State Police investigated a theft at a residence near Pendleton. He asked the lady of the house which had been burglarized if she suspected anyone. She replied that the defendant was the only one she could think of. The defendant was a parolee and a "close associate" of her son. The officer tried to contact defendant on three or four occasions with no success. Finally, about 25 days after the burglary, the officer left his card at defendant's apartment with a note asking him to call because "I'd like to discuss something with you." The next afternoon the defendant did call. The officer asked where it would be convenient to meet. The defendant had no preference; so the officer asked if the defendant could meet him at the state patrol office in about an hour and a half, about 5:00 p. m. The patrol office was about two blocks from defendant's apartment. The building housed several state agencies.
'The officer met defendant in the hallway, shook hands and took him into an office. The defendant was told he was not under arrest. The door was closed. The two sat across a desk. The police radio in another room could be heard. The officer told defendant he wanted to talk to him about a burglary and that his truthfulness would possibly be considered by the district attorney or judge. The officer further advised that the police believed defendant was involved in the burglary and [falsely stated that] defendant's fingerprints were found at the scene. The defendant sat for a few minutes and then said he had taken the property. This occurred within five minutes after defendant had come to the office. The officer then advised defendant of his Miranda rights and took a taped confession.
'At the end of the taped conversation the officer told defendant he was not arresting him at this time; he was released to go about his job and return to his family. The officer said he was referring the case to the district attorney for him to determine whether criminal charges would be brought. It was 5:30 p. m. when the defendant left the office.'" 429 U.S. at 493-94, 97 S.Ct. at 713.
The Court, in holding that the defendant's Miranda rights had not been violated because the questioning occurred in a noncustodial situation, stated:
" . . . [p]olice officers are not required to administer Miranda warnings to everyone whom they question. . . . Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him `in custody.' It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited." 429 U.S. at 495, 97 S.Ct. at 714. (Emphasis added by author).
This court, in cases dealing with whether a custodial situation exists, has relied on factors generally indicating the degree the police suspect the person interrogated of *244 committing the offense in order to determine whether there actually is custody. See State v. Hodges, 349 So.2d 250 (La. 1977); State v. Corey, 339 So.2d 804 (La. 1976); State v. Roach, 322 So.2d 222 (La. 1975).
A comparison of the facts of the instant case with those of Mathiason and with the factors indicating the degree of police suspicion in mind, obtains the following: (1) in both cases the police had reason to suspect the defendant in Mathiason, because of the victim's information; in the present case, because the plane was registered to the defendant's corporation; (2) the police initiated the interview in Mathiason; Segers initiated the meeting in the present case; (3) in neither case did the police have positive proof of the defendant's involvement until after the initial questioning.
We conclude that the defendant's statements made to the Sheriff, like those of the defendant in Mathiason, were not made while in custody within the meaning of Miranda v. Arizona, supra.
Defendant argues that even if Miranda is not applicable, his rights afforded by Art. 1, § 13 of the La.Const. of 1974 were violated when the Sheriff questioned him.
Art. 1, § 13 provides, in pertinent part:
"When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him.. . ." (Emphasis added).
Defendant is correct when he argues that the term "detained" might not mean the same as "custody" under the Miranda cases. This situation was at least considered at the time Art. 1, § 13 was formulated. Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L. Rev. 1, 40-12 (1974).
In interpreting the meaning of "detained" it is essential to keep in mind the reasons for the requirement that police inform citizens of their constitutional rights prior to interrogation. Central to the purpose of this requirement is the protection of the individual's rights against self-incrimination from the coercive potential of police interrogation. In the present case we find particularly significant the fact that the defendant initiated the contact by voluntarily calling the Sheriff's Office. The Sheriff's initial questioning was conducted in a cordial atmosphere without any of the earmarks of coercion. While the defendant was certainly under suspicion because of his connection with the corporate owner of the plane, his ownership interest, while suggesting the possibility, or even the probability, of criminal participation or knowledge, was not necessarily incriminating. The facts of this case do not show that the defendant was "detained" within the meaning of Art. 1, § 13 at the time he answered the Sheriff's initial questions.
This assignment is without merit.

Assignment of Error No. 4 (Segers)
Defendant contends it was error for the trial court to refuse to give a requested special jury charge on mistake of fact.
A requested special charge need not be given if it is adequately covered by the general charge or another special charge. C.Cr.P. 807; State v. Progue, 350 So.2d 1181 (La.1977); State v. Brooks, 350 So.2d 1174 (La.1977). The trial court adequately charged the jury concerning mistake of fact in the present case.
This assignment is without merit.

Assignment of Error No. 5 (Segers)
Defendant Segers complains that his sentence is unconstitutionally excessive *245 within the meaning of Art. 1, § 20 of the La.Const. of 1974.
After conviction but before sentence the trial court held a pre-sentence hearing at which the defendant put on evidence of mitigating factors to be considered in sentencing. The twenty-eight year old defendant showed that he had no previous criminal record and that he had been consistently employed since he completed his education. At the time of the offense defendant was the president of a family corporation engaged in the sales and service of computer related equipment. The corporation had gross sales of close to $1,000,000 and a net of approximately $80,000. Defendant testified that he thought the trip to Mexico was for the purpose of obtaining ancient Indian artifacts and that it was not until the trip back that he learned that the airplane was loaded with marijuana. This testimony was corroborated by the results of a lie detector test.
The maximum sentence for conspiracy to distribute marijuana is five years imprisonment and a fine of $5000. R.S. 14:26, R.S. 40:966 B(2). The maximum sentence for possession with the intent to distribute marijuana is ten years imprisonment and a fine of $15000. The defendant was sentenced to serve four years imprisonment at hard labor, fined $7500 and ordered to serve one additional year in default of the payment of the fine on the conspiracy conviction. On the possession with intent to distribute conviction defendant was sentenced to serve eight years imprisonment, fined $15000 and ordered to serve two additional years in default of payment of the fine.
In view of the fact that the offense involved the transportation of such a large amount of marijuana into Tensas Parish, we conclude that the defendant's sentence (concurrent sentences, C.Cr.P. 833) was not excessive. The fact, if accepted as true, that he did not know the true nature of the venture until the marijuana was on the plane does not alter the fact that he continued in its commission without notifying the authorities.
This assignment is without merit.
For the foregoing reasons, defendants' convictions and sentences are affirmed.
SANDERS, C. J., concurs in the result only.
MARCUS, J., concurs and assigns reasons.
SUMMERS, Justice, concurring in the result only.
This court cannot properly review the excessiveness of the sentence in this case.

Appendix to follow.
*246 
*247 MARCUS, Justice (concurring).
La.Const. art. 1, § 20 (1974) provides that "[n]o law shall subject any person. . . to cruel, excessive, or unusual punishment." (Emphasis added.) Hence, our review is limited to whether the "law" subjects any person to excessive punishment, not whether a sentence in a particular case is excessive. Accordingly, I respectfully concur.