CALOGERO, Justice.
Lee Underwood was convicted after a jury trial of three counts of distribution of marijuana and sentenced to terms of imprisonment of seven, eight and ten years, respectively, the terms to run consecutively. On appeal we affirm the defendant’s convictions but vacated the sentences and remanded for re-sentencing because information brought to light at the time of an earlier limited remand[1] indicated that the severe sentences imposed were possibly based on false information contained in the pre-sentence report. 353 So.2d 1013 (La. 1978). We determined that the trial court erred in denying Underwood access to the relevant and non-confidential portions of the pre-sentence report and in failing to afford the defendant an opportunity to rebut as false any derogatory information in the report. On remand for re-sentencing the trial judge imposed sentences which included four, six and ten year terms of imprisonment, respectively, and decreed that the sentences imposed are to be served consecutively, in effect decreeing a five year reduction. The defendant timely objected to the sentences imposed on the ground that they are excessive, and now seeks the Court’s review of that claim.
In connection with Underwood’s original appeal it was noted that the three instances of distribution took place within a two month time period and that the sale in each case was to the same undercover officer, Weems. The first sale was of ten lids of marijuana (less than one pound), the second involved twenty lids and the third, which culminated in Underwood’s arrest, was of fifty-three pounds. After the arrest, as a result of the execution of a search warrant, three large cellophane bags of marijuana were seized from Underwood’s residence.
In setting forth reasons for the sentences imposed in the instant case, the trial judge unequivocally stated that he did not use the prejudicial pre-sentence report originally prepared by the division of probation and parole which contained the offending data highlighted in our original opinion.[2] His *1341 reasons expressly recognized a joint stipulation that the state had no evidence in support of this prejudicial matter contained in the original pre-sentence report other than the evidence adduced at trial. The lengthy reasons for sentence filed in the record in support of the sentences imposed clearly set forth that the trial testimony of the undercover officer and inferences which the trial judge drew therefrom were the bases for the determination that none of the mitigating factors of Article 894.1 B of the Code of Criminal Procedure are present to an extent which would militate in favor of suspension of sentence or probation. The trial judge expressed the view that incarceration for a substantial period of time is appropriate on each count, for the reason that a lesser sentence would both enhance the risk of future drug dealings and grossly deprecate the seriousness of the defendant’s crimes.
Defendant relies heavily upon the observations made by this Court in its earlier opinion that on their face the consecutive sentences totalling twenty-five years appear excessive, absent some further explanation not found in the record. The original opinion set forth the view that in the case of a defendant with a settled family and no previous record who made three sales to the same agent over a short time span, consecutive sentences totalling twenty-five years are excessive. The Court reported that concurrent sentences are the usual rule in the case of a defendant without a previous record, absent a showing that the public safety requires a longer sentence, and noted that except in the case of a defendant with a previous record, concurrent sentences should normally not exceed the maximum for the most serious offense tried. National studies were said to indicate a usual range of sentence for a nondangerous first offender as not exceeding from five to ten years as a maximum, absent exceptional circumstances such as extended criminal activity which had not theretofore led to conviction.
The state in brief notes the proscription set forth in Article 878 of the Code of Criminal Procedure[3] and argues that the Court’s reviewing authority in this matter is strictly limited to a review of the statute (R.S. 40:966) in order to determine its constitutionality. Because the sentences imposed in the instant case do not exceed the statutory maximum and do not violate the procedures set forth for sentencing in the Code of Criminal Procedure, the state urges that Underwood’s appeal is without merit.
A majority of the Court has indicated its agreement that Article I, § 20 of the Louisiana Constitution of 1974 renders the issue of excessiveness of individual sentences a subject of appellate review. In State v. Segers, 355 So.2d 238 (La.1978), without addressing the issue of the scope of appellate review of sentences in light of that constitutional provision, the Court affirmed the sentences imposed, a majority agreeing that they were not excessive. Three judges merely concurred in Segers, two for the articulated reasons that the Court could not properly review the excessiveness of the sentences imposed. But see State v. Walker, 328 So.2d 87, 89 (La.1976), in which the judges who lately in Segers and other cases[4] expressed or intimated the view that the excessiveness of individual sentences cannot properly be reviewed joined without reservation in the opinion which reviewed the length of an individual sentence and found it not to be excessive. However, this Court has never heretofore expressly held that Article I, § 20 of the 1974 Constitution confers upon this Court the authority, nor imposes upon it the duty, to determine whether sentences imposed are excessively severe. See State v. Kemp, 359 So.2d 978 *1342 (La.1978).[5] Therefore, members of the Court continue to author opinions viewing the matter as an undecided issue, in which even members of the Court who consider the matter settled in favor of appellate review of individual sentences for exces-siveness join. See, e. g., State v. Johnson, 363 So.2d 458 (La.1978). It is not necessary in this opinion to squarely meet the issue of the scope of the authority conferred by the 1974 Constitution’s prohibition against excessive punishment, since, under either interpretation of Article I, § 20, the facts and circumstances present in the instant case establish that the trial judge did not abuse his discretion in imposing sentence upon the defendant.
When we originally considered Underwood’s appeal we did not have before us the testimony of the undercover officer, Weems, upon which the trial judge relied so heavily in determining the sentences he imposed. Weems’ unrebutted testimony recounted that when the officer first approached the defendant at his home, telling a story accepted by defendant that a man he met in jail had sent him to deliver $42.00 owed Underwood for marijuana, Underwood responded to a complaint by Weems that he was unable to obtain work by inquiring whether Weems was interested in purchasing quantities of marijuana from him at $7.00 per package for re-sale at a profit. To assuage Weems’ feigned apprehensions about detection in the event he would undertake marijuana sales, Underwood assured that there was no cause to “. . . worry about the heat around here” because “[t]hey can only get the little guys and not the big guys.” On the occasion of their first meeting Underwood sold Weems ten packages of marijuana, which he retrieved from a shed beside his home, accepting $60.00 in payment and “fronting” Weems the additional ten dollars. Underwood explained to the officer at this time that he normally sold marijuana in bundles of thirty packages each (totalling one pound) for the price of $210.00, but agreed to break down a bundle for Weems. He represented to Weems that he could supply any amount of marijuana desired because he grew his own, and stated that he could establish Weems as a seller in one of several surrounding areas.
A month later Weems again contacted Underwood, relating that he had visited friends in Little Rock, Arkansas during a recent visit to that city who expressed an interest in buying marijuana in 75 to 100 pound quantities. Weems recounted that Underwood told him a week’s notice would be required before he could supply such amounts and it was agreed that there would be further contact regarding this tentative arrangement. At this second meeting Underwood inquired whether Weems wished to purchase more marijuana and the two men agreed to a transaction involving twenty packages, sold for a total of $140.00. Underwood secured the marijuana from the bed of his pick-up truck an hour later when Weems returned to Underwood’s residence to receive the substance, as instructed.
Approximately two weeks after the second transaction undercover officer Weems notified the defendant that his friends in Little Rock desired to purchase 100 pounds of marijuana. Underwood and Weems met at a shopping center to discuss the possibility of such a sale and Underwood confessed that he could only supply 53 pounds because of the time of year. The *1343 meeting terminated and Underwood drove Weems to an apartment complex, from whence the defendant was noted to surreptitiously observe the building which Weems entered for a time. A quantity price of $140.00 a pound had been finally agreed upon (which would render the total price of $7,420.), and Weems telephoned defendant and represented that he had arranged to meet the buyers at the airport late at night, and obtain from them the money. He sought to then meet Underwood for a transfer of the marijuana.
Law enforcement officials involved in efforts to apprehend drug offenders arranged to land an airplane at an appointed airfield and Weems pretended to meet the buyers and receive from them money and containers in which to place the marijuana to be purchased. While going through the motions of this pretended receipt of money Weems noted a vehicle identical to one he had before observed at Underwood’s home drive by the airport area several times, as if conducting a surveillance of the scene. Weems contacted Underwood by telephone, then proceeded to the church lot where he had agreed to meet Underwood and soon thereafter the defendant arrived. Before actually approaching Weems, Underwood remained parked across the street from Weems’ vehicle and cautiously observed the area for a period of time. When the two men met, Underwood proposed that they proceed to another unspecified location in the area to consummate the sale. When Weems refused to accompany Underwood, the defendant then used his citizens band radio to call and order delivery of the marijuana to the church lot. The delivery vehicle, the same one observed by Weems driving around the airport area earlier in the evening, soon arrived and a young girl exited along with the man who was driving.
Underwood retrieved bags unloaded from the bed of the delivery vehicle and placed them in Weems’ car. After Weems opened the bags to assure that they contained marijuana, he announced his identity and advised Underwood that he was under arrest. Underwood dived to the ground after hearing Weems’ announcement but made no effort to use the gun that was there.
From Weems’ uncontradicted account of his dealings and conversations with Underwood the trial judge concluded that Underwood was a substantial supplier of an illegal drug. In support of this conclusion, the trial judge pointed to the testimony relating defendant’s urging of Weems’ purchases, intended for re-sale, on three separate occasions and the precautions he took in preparing for the large, final sale. From defendant’s assertions to Weems the trial judge inferred that Underwood had some kind of profit-seeking organization which employed assistants whom Underwood continually sought, that he was a grower and supplier who was totally familiar with street prices and disdainful of police efforts against distributors of his stature.
Our review of the testimony of Officer Weems establishes that the conclusions of fact and inferences of the trial judge were adequately supported by the record. Based on the facts found, we cannot say that the imposition of four, six and ten year terms of imprisonment to be served consecutively was an abuse of the trial judge’s discretion in determining the appropriate sentences available from the statutory range of sentences.[6]
The trial judge painstakingly outlined his consideration of the sentencing guidelines set forth in Article 894.1 of the Code of Criminal Procedure,[7] concluding that de *1344 fendant’s circumstances and his attitude did not satisfactorily persuade that he was unlikely to commit another crime during the period of a suspended sentence or probation, in light of his admission that he would not have undertaken his activities had he realized the severity of the penalties. This representation, the trial judge found, merely indicated an expectation that he would be undetected or be afforded leniency if apprehended. The judge also opined that a lesser sentence would not only enhance the risk of future drug dealings but would grossly deprecate the seriousness of the defendant’s crimes. The trial judge stressed that Underwood acted of his own volition and reasoned that while Underwood had no prior criminal record, it could not be learned how long he had pursued his drug enterprises without detection prior to his contact with Officer Weems. The trial judge noted his consideration of the updated pre-sen-tence report prepared by the Division of Probation and Parole, which indicated that Underwood had resumed his legitimate business operations and devoted significant time to religious and family affairs, as well as to work, since the previous pre-sentence report filed more than eighteen months before. However, the trial judge stated that the defendant’s behavior was exactly what one might expect of a person awaiting re-sentencing after vacation of previous, lengthy sentences and was considered to be as consistent with a desire to influence judicial leniency as with a desire to truly repent and a resolution to refrain from further illegal conduct. Because his re-evaluation of all the features of the sentencing guidelines prompted a conclusion that he may have given slightly less weight to the fact that these were legally Underwood’s first offenses than he should have when initially imposing sentences, the trial judge reduced the term of years imposed upon Underwood’s convictions for the distribution of the two smaller amounts of marijuana from seven and eight years to four and six years, respectively, determining to re-impose the ten year sentence for the distribution of the large quantity and the consecutive mode of service of the three sentences.
We do not necessarily agree with the trial judge that Underwood’s claimed lack of awareness of the seriousness of the crimes and the penalties indicates that there exists an undue risk» that leniency would lead to the commission of other crimes. However, we are in agreement with the trial judge’s assessment of the other factors considered in connection with application of the sentencing guidelines of Article 894.1 to the extent that we cannot say that the sen *1345 tences imposed reflect an abuse of the sentencing judge’s large discretion. There is no reversible merit in defendant’s claims of excessiveness of sentence.

Dec "ee

For the reasons stated hereinabove, we affirm the sentences imposed.
SENTENCES AFFIRMED.
SANDERS, C. J., concurs in the decree.
SUMMERS, J., concurs.
TATE, J., dissents and assigns written reasons.
MARCUS, J., concurs.

. After the appeal was ordered by the trial court, but before the record was lodged in this Court, Underwood sought a limited remand, alleging that the exceptionally heavy sentence imposed on him under the circumstances indicated that it was based on prejudicial and inaccurate information in a pre-sentence report. Request for inspection was denied by the trial judge, notwithstanding the judge expressed he had no objection to inspection, on the basis that the report compiled in this case had been returned to the parole and probation department. We granted a remand for consideration by the trial judge of Underwood’s request for pre-sentence report data. 345 So.2d 904 (La. 1977).

. The portion of the report which prompted complaints set forth the following:
“According to information received from the Narcotic Strike Force, the offender was probably the largest distributor of marijuana that they have apprehended in this area. He was *1341 bringing it in large quantities, and at times using at least one of his employees that worked for him in his construction business to make deliveries for him.”

. C.Cr.P. art. 878 provides:
“A sentence shall not be set aside on the ground that it inflicts cruel or unusual punishment unless the statute under which it is imposed is found unconstitutional.”

. See e. g., State v. Gambino, 362 So.2d 1107 (La.1978).

. The controversy which exists is well expressed in State v. Progue, 350 So.2d 1181 (La. 1977) in the following language:
“La.Const. art. 1, § 20 provides in pertinent part:
. No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment . . . (Emphasis added.)
Some members of this court, including the author of this opinion, are of the view that this constitutional provision only gives to this court the judicial power to declare as unconstitutional laws which provide for excessive sentences rather than extending the judicial power to appellate review of sentences imposed in individual cases. Other members of the court interpret the provision as conferring upon this court constitutional authority to review sentences imposed in individual cases.”

. R.S. 40:966 provides the penalty for distribution of marijuana. It stated, in pertinent part:
“Any person who violates Subsection A [prohibiting distribution] with respect to:
Any other controlled dangerous substance classified in Schedule I [including marijuana] shall, upon conviction be sentenced to a term of imprisonment at hard labor for not more than, ten years and pay a fine of not more than fifteen thousand dollars.”

. Article 894.1 of the Code of Criminal Procedure provides in full as follows:
“A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
*1344 (1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant’s crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant’s criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant’s criminal conduct, though failing to establish a defense;
(5) The victim of the defendant’s criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant’s criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.”