CALOGERO, Justice.
Defendants were charged by bills of information with possession of marijuana with intent to distribute, a violation of La. R.S. 40:966. A pre-trial motion to suppress the 12,600 pounds of marijuana, urging that the seizure was warrantless, without consent and without the requisite exigent circumstances, was denied after a lengthy hearing. The trial court permitted the defendants to enter guilty pleas to the crime charged with reservation of the right to appeal the ruling on the motion to suppress, a procedure approved in State v. Crosby, 338 So.2d 584 (La.1976). Upon their pleas of guilty, each defendant was sentenced to serve ten years at hard labor and pay a fine of $15,000.
The trial judge’s per curiam filed in the record notes that during the early morning hours of April 23, 1977 a major fire which destroyed the Safari Club in Galliano, La-fourche Parish, was in progress. When firefighting efforts commenced, Louisiana Highway No. 1, running in front of the club, was blocked. At about 3:55 A.M., most of the fire was out, but hot spots in the rubble were causing flare-ups and firefighters were responding to the problem. There were at least three fire engines still at the scene, pumping water through hoses placed in Bayou Lafourche across Highway 1 for fighting the sporadic flare-ups. Partial road blocks on Highway 1 on either side of the Safari Club were still in effect and fire and police units with emergency lights activated were at the scene. Large numbers of people, some walking on or near the roadway, were still present. Major Doucet of the Lafourche Sheriff’s Office observed a blue 1974 GMC truck drive through this congested area over fire hoses at approximately 45 miles per hour, the speed posted for travel in the area under normal circumstances. Doucet instructed Deputy Cant-relle to pursue the truck and Cantrelle overtook the vehicle at a point about one mile north of the fire scene. The truck pulled over on the shoulder, then Deputy Cantrelle parked behind the truck and emerged from his unit. As Cantrelle approached the truck the driver also exited his *756 vehicle and walked to the truck’s rear to meet the deputy. Cantrelle asked the driver to produce his license and the driver complied. Cantrelle thereby learned that the driver was Thomas Tighe of Minnesota. The deputy advised Tighe that he was under arrest. At this time Cantrelle observed marijuana gleanings on the back of the truck and requested permission to open the truck. Such permission was denied. Deputy Cantrelle. directed Tighe to drive the truck to the Galliano annex of the Sheriff’s Office, where both Tighe and his passenger, Kaercher, were apprised that they were under arrest and given Miranda warnings. After escorting the defendants into the annex, Cantrelle, accompanied by Major Dou-cet and Detective Robert Boughamer, again viewed the rear of the truck; marijuana gleanings were clearly observable on the truck’s tailgate and partially sticking out from under the rear door. A strong marijuana odor was detected. Boughamer took samples of the gleanings from the tailgate, subjected them to field testing and obtained positive results. Cantrelle had commenced preparation of the affidavit which he planned to submit in support of his application for a search warrant for the truck. After the field testing Boughamer, accompanied by Doucet and Deputy Lirette, returned to the rear of the truck and opened the doors, observing numerous bales of marijuana within. When Lirette returned to the annex office, he assisted Cantrelle in completing the preparation of the affidavit.[1] Cantrelle obtained a warrant to search the truck and the search was conducted at approximately 7:00 A.M. Based on the 12,600 pounds of marijuana found in the truck, defendants were advised that they were charged with possession of marijuana with intent to distribute.
The defendants attack the search conducted pursuant to the warrant, urging that the warrant was invalidly obtained and claiming that the affidavit fails to set forth the requisite probable cause upon which the warrant’s issuance must be based. We first examine Cantrelle’s affidavit which recited the following facts to determine whether it sets forth the articulated probable cause necessary to support the search warrant.
At approximately 3:55 A.M. on April 23, 1977, while Cantrelle was working traffic at the Club Safari fire site he saw the vehicle for which permission to search was sought travelling in excess of 40 M.P.H. through the congested area. As it approached the congestion, it appeared to maintain its speed rather than slow down; it was noted that the truck maintained its rate of speed while travelling through the area. Cant-relle pursued the truck and overtook it after having travelled a distance of about a mile. The officer approached the truck and asked that the driver alight and come to the rear of the truck. The driver complied and Cantrelle asked him for his driver’s license; while the driver sought to produce the license, Cantrelle, glancing at the rear of the truck, observed what appeared to be green vegetable matter on the truck’s tailgate. Cantrelle did not remark upon his observation, but merely accepted the license produced, which revealed that the driver was Tighe, a resident of Minnesota. Cant-relle informed Tighe that he was under arrest for “his offense as he proceeded through the contested area” and instructed him to proceed to the annex. At the annex Cantrelle returned to the rear of the truck and noticed more closely the green vegetable matter on the tailgate, some of which he retrieved. Cantrelle then commenced preparation of the affidavit and Tighe was informed that a warrant was being sought. The affidavit notes that the vehicle was secured in front of the annex in plain view, pending the issuance of the search warrant and exploration pursuant thereto.
Appellants protest that the affidavit’s repeated references to observation of “green vegetable matter” and “green matter” fall short of a claim that marijuana was viewed. They urge that even if the affidavit had noted observation of “what appeared to be *757 marijuana,” a mere suspicion would thereby have been related, not the concrete facts which the law requires in an affidavit in support of a warrant application.
It is well established in the jurisprudence that affidavits for search warrants are tested and interpreted in a commonsense and realistic fashion. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); State v. Boyd, 359 So.2d 931 (La.1978); State v. Segers, 355 So.2d 238 (La.1978); on rehearing, 357 So.2d 1 (La.1978). Construing the instant affidavit in a realistic manner, we conclude that it did set forth probable cause to search. We agree with the State that the term, “green vegetable matter,” is synonymous with the word, “marijuana,” when it is used in law enforcement and judicial proceedings. Moreover, the defense misapprehends the requirement of Article 162 of the Code of Criminal Procedure that an affidavit in support of a search warrant application set forth facts when it construes that requirement to mean that the substance viewed must have been conclusively identified or scientifically proven to be a controlled dangerous substance. The fact that the search warrant issued authorized exploration for one item only, marijuana, bolsters our conclusion that when sighting of green vegetable matter is reported by a law enforcement official, the “green vegetable matter” is understood to be suspected marijuana.
The representations set forth in the affidavit adequately supply probable cause upon which to base the issuance of a search warrant for the truck defendant Tighe was driving. In State v. Segers, supra, we noted that a commonsense reading of the affidavit revealed that the issuing magistrate was told of the affiants’ belief that marijuana was hidden in the described vehicles, such belief being based on the observation of marijuana gleanings on the outside of the vehicles and the detection of the odor of marijuana in the area. We held that those facts sufficiently supported a finding of probable cause.
As in the Segers case, the affiant was a law enforcement official. Realistically, when an officer seeks a search warrant based on his sighting of green vegetable matter and the magistrate construes the representations as a request to search for marijuana, the settled principle requiring that probable cause determinations be paid great deference, which mandates that resolution of doubtful cases be largely determined by the preference accorded warrants, dictates our judicial approval of the affidavit’s sufficiency. State v. Anderson, 357 So.2d 547 (La.1978).
The appellants’ claim of the insufficiency of the affidavit is without merit.
Appellants’ argument that the search warrant was invalidly obtained is based on the claim that failure to apprise (in the affidavit) of the earlier, warrantless search constituted an unjustified and reprehensible misrepresentation by omission which requires disapproval of the warrant. The issue of affiant’s knowledge vel non of the prior search is urged to be irrelevant; because Deputy Lirette, who was present at the warrantless search, assisted Deputy Cantrelle in the preparation of his affidavit by typing it, intentional and purposeful deception of the judge was wrought by means of State action.
Insofar as acquisition of the warrant was concerned, only the affiant, Deputy Cant-relle, contacted and communicated with the issuing judge. There is no representation that Cantrelle knew that a warrantless search had been conducted by fellow officers, and a review of the entire record fails to establish that there was such knowledge on Cantrelle’s part. Deputy Lirette testified that he did not advise Cantrelle that the truck had been opened; Cantrelle himself stated that he only learned that the truck had been opened without a warrant after he himself had secured the search warrant.
The issue which the Court must determine is whether the search warrant was invalidly procured. The record fails to establish any deception, fraud or misrepresentation on the part of the affiant, whose *758 representations formed the basis for the warrant’s issuance. We have determined that the contents of the affidavit were sufficient to support a finding of probable cause. While the actions of fellow officers in conducting a warrantless search might be viewed as reprehensible if undertaken under circumstances where there was no legal justification for their intrusion, that issue has no bearing on our determination that the affiant here validly obtained a warrant to conduct a search of the truck.
All of the defendants’ claims relating to the search warrant lack reversible merit. The trial court did not err in denying defendants’ motion to suppress.
Having determined the legality of the search conducted pursuant to the warrant, we need not consider defendants’ arguments that the trial court erred in determining that the warrantless search conducted by Boughamer, Doucet and Lirette was valid, due to the existence of exigent circumstances at the time Deputy Cantrelle had both truck and driver detained on the shoulder of Highway 1.

Decree

For the foregoing reasons, the defendants’ conviction and sentences are affirmed.
AFFIRMED.
DENNIS, J., concurs.

. Lirette’s assistance consisted of typing Cant-relle’s affidavit and aiding the less experienced officer with wording of the affidavit. Lirette made no suggestions with regard to the affidavit’s substance.