James VANDERPOOL *v.* STATE of Arkansas

CA CR 81-14                                  628 S.W. 2d 576

Court of Appeals of Arkansas
Opinion delivered February 17, 1982
[Rehearing denied March 24, 1982.]

*Thomas A. Martin, Jr.,* for appellant.

*Steve Clark,* Atty. Gen., for appellee.

JAMES R. COOPER, Judge. The appellant, James Vanderpool, was charged in the Circuit Court of Newton County with the crime of manufacturing a controlled substance, marijuana, in violation of Ark. Stat. Ann. § 82-2617 (Supp. 1981). After a jury trial, he was found guilty and sentenced to ten years in the Arkansas Department of Corrections plus a fine of $10,000.00. From that conviction comes this appeal.

## THE FACTS

The record reflects that the sheriff of Newton County, Ray Watkins, and one of his deputies discovered a field of marijuana and placed it under surveillance. The surveillance began in the early morning hours of August 8, 1979. Around dawn on August 9, 1979, the record reflects that the sheriff and his deputy observed Mr. Vanderpool coming down a path toward the marijuana with a shotgun and a grocery sack. They observed him harvesting marijuana leaves for approximately twenty minutes. The sheriff and his deputy then returned to Jasper and obtained a search warrant from the municipal judge. Appellant challenges the validity of the affidavit executed for the purpose of obtaining a search warrant. In the course of the trial, the officers testified that they executed the search warrant by returning to a cabin, located on the same property as was the field of marijuana and serving the warrant on Mr. Vanderpool. During the course of their search of the cabin for the grocery sack, there was testimony elicited that Mr. Vanderpool reached up on a refrigerator and got a pan down and then made a statement. The statement was not quoted by the sheriff. Defense counsel moved for a mistrial, and that motion was denied. (We note that the drug analyst testified there were samples tested from the pan and those samples did contain marijuana.)

During the course of the trial the appellant attempted to introduce evidence related to photographic experiments concerning the visibility of the fields from the place where the officers were allegedly concealed.

Also during the course of the trial the appellant

attempted to elicit testimony concerning a later case of tampering with evidence by the sheriff of Newton County. This offer of evidence was deemed inadmissible by the court.

## THE SUFFICIENCY OF THE AFFIDAVIT

In this case the appellant made a motion to suppress the fruits of the search as to both the marijuana seized within the cabin and the marijuana seized in the adjoining fields.

When we review a trial court's ruling on a motion to suppress evidence, we must make an independent determination based upon the totality of the circumstances, with all doubts resolved in favor of individual rights and safeguards, but we will not reverse the trial court's finding unless it is clearly erroneous. *State* v. *Tucker,* 268 Ark. 427, 597 S.W. 2d 584 (1980): *Grant* v. *State,* 267 Ark. 50, 589 S.W. 2d 11 (1979).

The State bears the burden of establishing that a search warrant was issued in compliance with the law by producing the required written evidence that was relied upon by the issuing judicial officer to establish probable cause. *Beed* v. *State,* 271 Ark. 526, 609 S.W. 2d 898 (1980); *Lunsford* v. *State,* 262 Ark. 1, 552 S.W. 2d 646 (1977). If the warrant and affidavit appear on their face to be valid, then it is presumed that everything essential to the issuance of the warrant has been done. It then becomes the defendant's burden to show that the warrant and its supporting documentation is invalid. Thus, any statement of fact, made as such, in the affidavit must be taken to be within the personal knowledge of the affiant, unless the defendant proves otherwise. *Schneider* v. *State,* 269 Ark. 245, 599 S.W. 2d 730 (1980).

A search warrant will not be issued unless it is supported by an affidavit containing facts or circumstances, not mere conclusions. It is the function of the judicial officer, before whom the proceedings are held, to make an independent and neutral determination based on the facts as to the existence of probable cause for the search. *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Miller* v. *State,* 269 Ark. 341, 605 S.W. 2d 430 (1980).

In *United States* v. *Ventresca,* 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965), the United States Supreme Court considered the standards by which an appellate court should approach the interpretation of affidavits supporting search warrants which have been duly issued by a judicial officer. The Court said:

> [Our] decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
>
> Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. *Jones* v. *United States,* supra, 362 U.S., at 270, 80 S. Ct., at 735. [380 U.S. at 108, 109; 85 S. Ct. at 746; 13 L. Ed. 2d at 689].

The United States Supreme Court reaffirmed the above interpretation of affidavits in *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

The affidavit for search warrant involved in this case states as follows:

### AFFIDAVIT

STATE OF ARKANSAS,
County of Newton
City of Jasper

Ray Watkins being duly sworn says on his oath that one Jimmy Vanderpool did, on or about the 9th day of Aug. A.D. 1979, in Newton County, Arkansas, Unlawfully manufactured a controlled substance by going to a field of green vegetables substance located on shop creek near Rex Vanderpools cabin and picked a large brown bag of green vegetables leaves then returned to the cabin with the bag of leaves contrary to the Ordinances and Statutes in such cases made and provided, and against the peace and dignity of the State.

/s/ Ray Watkins

Subscribed and sworn to before me this 9 day of Aug. A.D., 1979.

/s/ Fred Fennell
Municipal Court Judge

Appellant argues that there is nothing on the face of the affidavit to indicate whether the observations were those of Sheriff Watkins or of a third person. The affidavit does contain statements of fact and ought to be taken as within the personal knowledge of Sheriff Watkins absent proof to the contrary by the defendant. *Schneider, supra.*

Appellant also argues that the face of the affidavit does not specify which controlled substance was allegedly being harvested, and that the allegations contained in the affidavit could just as easily apply to turnip greens as to marijuana.

Counsel has cited us to no case which has dealt directly with this question and we have only found one case close on its facts. In *State* v. *Kaercher,* 362 So. 2d 754 (La. 1978), cert. den., 440 U.S. 936, 99 S. Ct. 1280, 59 L. Ed. 2d 494 (1979), the Louisiana Supreme Court dealt with a situation where a police officer had observed green vegetable material on the tailgate of a pickup truck and sought a warrant for the interior of the truck. The affidavit referred to the officer's observation of "green vegetable matter" and "green matter" but did not use the word marijuana in connection with the green material.

In that case, the Court stated:

> It is well established in the jurisprudence that affidavits for search warrants are tested and interpreted in a commonsense and realistic fashion. *United States* v. *Ventresca,* 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); *State* v. *Boyd,* 359 So. 2d 931 (La. 1978); *State* v. *Segers,* 355 So. 2d 238 (La. 1978); *on rehearing,* 357 So. 2d 1 (La. 1978). Construing the instant affidavit in a realistic manner, we conclude that it did set forth probable cause to search. We agree with the State that the term, "green vegetable matter," is synonymous with the word "marijuana," when it is used in law enforcement and judicial proceedings. . . . The fact that the search warrant issued authorized exploration for one item only, marijuana, bolsters our conclusion that when sighting a green vegetable matter is reported by a law enforcement official, the "green vegetable matter" is understood to be suspected marijuana.

In the case at bar, the sheriff of Newton County, in the affidavit executed before Judge Fennell, alleged that Mr. Vanderpool had violated the Arkansas Criminal Code by manufacturing a controlled substance by harvesting a green vegetable matter. A commonsense view of the affidavit certainly does not support a conclusion that the sheriff was alleging that Mr. Vanderpool was harvesting turnip greens or lettuce, since those substances obviously are not illegal. We hold that, on these facts, the affidavit stated sufficient probable cause for the issuing magistrate to believe that a criminal offense had occurred, that is, the manufacture of a controlled substance, to wit, marijuana.

## THE GRANTING OF A MISTRIAL

The record reflects that Deputy Bushnell indicated that while the officers were inside cabin Mr. Vanderpool reached up on the refrigerator and handed them a pan. The deputy indicated Mr. Vanderpool made a statement, but the statement was never related to the jury. The prosecutor indicated that he did not intend to pursue the line of questioning regarding a statement any further. It is from

this pan that two of the samples were obtained which were later tested by the crime lab and found to be marijuana. (We note that something over a hundred and fifty plants were found in the field that was in question and apparently there was less than two ounces of marijuana found in the pan. The grocery sack of marijuana leaves was not located so far as we are able to tell from this record.)

The appellant moved for a mistrial on the basis of the testimony related above. We note that a mistrial is an extreme remedy, and we will not reverse the decision of the trial court unless his ruling constitutes an abuse of discretion. *Meyers* v. *State*, 271 Ark. 886, 611 S.W. 2d 514 (1981). On these facts we cannot say that the trial court abused his discretion. No statement was introduced, nor did the deputy testify as to any statement made to him. He simply testified as to the fact that he observed the defendant remove a pan from the top of the refrigerator and hand it to him. We find no merit to this allegation of error.

## THE EXPERIMENTS AND PHOTOGRAPHS

The appellant attempted to introduce evidence of an experiment which he had conducted. The experiment involved putting a person at the location where the sheriff claimed he was when he saw Mr. Vanderpool and the fields in question. The prosecuting attorney objected and the court held that the evidence was inadmissible because of remoteness of time, inability to duplicate the experience of the officer and the lack of trustworthiness of the witness. We will reverse the trial court's decision only if we find that it is an abuse of his discretion. The factors that the trial court pointed out in his decision are factors which bear on whether the experiment was relevant. See, McCormick, The Law of Evidence, § 202, pp. 485, 486 (2d ed. 1972). We find no abuse of discretion here.

## THE EVIDENCE OF TAMPERING WITH EVIDENCE BY THE SHERIFF

Apparently, the appellant attempted to show a systematic course of conduct by the sheriff of Newton County

which involved tampering with evidence in drug cases. Appellant planned on calling a witness who had previously been a deputy sheriff. The witness supposedly would have testified that in a later case Sheriff Watkins had lost some plants and had replaced them with plants from his evidence locker. The prosecutor responded and pointed out that if the incident happened at all it had occurred a year after the Vanderpool arrest and that such evidence was too remote. Further, the prosecutor indicated that such evidence should be barred under Rule 608 (b) of the Uniform Rules of Evidence as being a "specific incident of conduct." The court ruled the evidence inadmissible because it involved a collateral issue.

On cross-examination of Sheriff Watkins, appellant's counsel inquired of the sheriff as to whether he had substituted marijuana in this case, resulting in the fact that the marijuana tested by the crime lab was not the marijuana seized in the field. The sheriff responded that he had never substituted evidence in a case, including this case. If the issue of substitution of marijuana was a primary issue rather than a collateral one, counsel would be correct in asserting the right to introduce evidence to impeach Sheriff Watkins, but it was never asserted that the marijuana in this case had been tampered with. Therefore, the issue involved here was a collateral one.

In *Mathis* v. *State,* 267 Ark. 904, 591 S.W. 2d 679 (Ark. App. 1980), the Arkansas Court of Appeals stated:

> On cross-examination on collateral issues a cross-examiner is bound by the answers he receives from the witness and may not impeach his testimony by the introduction of contradictory evidence. *Powell* v. *State,* 260 Ark. 381, 540 S.W. 2d 1 (1976); *Odom* v. *State,* 259 Ark. 429, 533 S.W. 2d 514 (1976).
> The questions asked of Ms. Dennis were collateral to the issue of the trial. The Arkansas Supreme Court set out the test for determining collateral issues in *McAlister* v. *State,* 99 Ark. 604, 139 S.W. 684 (1911). This was relied upon in *Randall* v. *State,* 239 Ark. 312, 389 S.W. 2d 229 (1965). This determination to be made

is whether the cross-examining party would be entitled to prove the issue as part of his case. The determination of whether Ms. Dennis was a drug addict was not an issue would would have been an integral part of the appellant's case. See also, *Brown* v. *State*, 259 Ark. 464, 534 S.W. 2d 207 (1976). . . .

In *Goodwin* v. *State*, 263 Ark. 856, 568 S.W. 2d 3 (1978), the Arkansas Supreme Court dealt with a situation where appellant sought to introduce testimony about alleged misconduct of a narcotics agent. In that case the Court stated:

Appellant also sought to contradict the testimony of Roberts on collateral matters pertaining to conduct of Roberts on wholly unrelated occasions such as an alleged criminal act of Roberts in 1969, his alleged smoking of marijuana in the past, his alleged removal from a college for possession of alcohol, and alleged threats by him to other persons. This testimony was not admissible, although cross-examination on those subjects was proper.

In this case, we hold that the appellant was bound by the answers received from Sheriff Watkins on cross-examination and that he could not impeach his testimony by the introduction of contradictory evidence since the questioning concerned collateral matters. The appellant was not entitled to prove tampering with evidence in other cases as a part of his case in chief and there was no evidence sought to be elicited related to substitution of evidence in the case at bar.

We find no merit to any of the contentions raised by appellant and therefore we affirm.

Affirmed.