337 So.2d 1067 (1976)
STATE of Louisiana
v.
Harry COLE.
No. 57553.
Supreme Court of Louisiana.
September 13, 1976.
Rehearing Denied October 13, 1976.[*]
*1068 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., M. Charles Brandt, Asst. Dist. Atty., for plaintiff-relator.
Arthur A. Lemann, III, Supervising Atty., Loyola Law School Clinic, New Orleans, Paul A. R. Mason, Student Practitioner, for defendant-respondent.
SUMMERS, Justice.
Defendant, Harry Cole, was indicted by the grand jury of Orleans Parish for possession with intent to distribute heroin, a violation of Section 966 of Title 40 of the Revised Statutes. He filed a motion to suppress, alleging that the evidence (heroin) was seized without a search warrant, arrest warrant, or otherwise pursuant to a valid arrest. After a hearing the motion to suppress was granted by the trial judge. The State then filed an application for writs of certiorari, mandamus and prohibition in this Court to review the ruling of the trial judge.
On November 15, 1975 Officers Albert Green, Howard Johnson, and Leary Adams, members of the Urban Squad Narcotics Task Force of the New Orleans Police Department Narcotics Division, were assigned to conduct a surveillance in the Calliope Housing Project area of the City of New Orleans. Informants had disclosed that defendant Cole was dealing in narcotics in that general vicinity. Concerned citizens had also informed the police of the narcotic activity "surrounding" Cole in the neighborhood. While the main objective of the assignment was to investigate Cole's activities, narcotic activity in general was also an objective of the surveillance.
The officers proceeded in an unmarked police car, driving around the designated area and stopping from time to time. Then, from a distance, Officer Johnson observed ten or fifteen black males mingling in the project courtyard near the intersection of Thalia and Galvez Streets. It appeared to the officers that they were transacting some sort of business. Johnson thought he recognized some of the participants from their mannerisms and build. Cole was included in the group and was known to Johnson who had gone to school with him. From his five years of experience observing narcotic activity, it appeared to Johnson that one of the participants was collecting what he assumed to be money from the others.
In order to obtain a closer look, the police vehicle was driven to a parking area where they stopped in a position where they were not readily visible to Cole, who knew them, for he had been stopped by them before. From this vantage point the officers saw Cole leave the group and enter the hallway of one of the apartment buildings at 1416 South Galvez Street. He was observed through windows as he ascended the stairway within the building.
About five minutes later Cole was seen as he descended the stairway. The officers drove toward the apartment building, and, as Cole emerged within ten or fifteen feet from the police car, Johnson called out "Harry". Cole looked up, and as he turned toward the police car he opened his left hand and dropped several tin foil packets which the officers saw glittering as they fell to the ground.
As Cole took a few steps toward the police car, the officers got out and stopped him. Johnson frisked Cole to make sure he was not armed, while Green walked past them and picked up the tin foil packets. Johnson joined him, opened one of the packets and found a powdery substance which he believed to be heroin.
Green then informed Cole that he was under arrest and advised him of his rights as an arrestee. Cole was then asked if there was more heroin in the apartment. He replied that there was none. He was then asked if the officers could go up to his apartment and Cole approved, stating there was nothing there. Cole then led them to the apartment where they searched Cole and found $169 in his pockets. Search of the apartment produced two pistols and 28 tin foil packets of heroin.
In regard to the tin foil packets of heroin retrieved by the police from the *1069 ground where Cole dropped them, we can find no evidence of an illegal search or seizure. In fact, there is no evidence of any search or seizure under these circumstances. The heroin was abandoned property. Burton v. United States, 272 F.2d 473 (9th Cir. 1960), cert. denied, 362 U.S. 951, 80 S.Ct. 863, 4 L.Ed.2d 869; State v. Williams, 304 So.2d 311 (La.1974). When the officers observed the glittering tin foil packets they had ample cause to detain and arrest Cole. Their experience in narcotic investigations told them what these packets contained. Prior to that time, the mere calling out of Cole's first name did not constitute such an infringement upon his right to privacy which would warrant invalidation of his subsequent arrest.
A law enforcement officer may, under statutory authority in this State, stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony and may demand an explanation of his actions. He may also search the outer clothing of such person for a dangerous weapon. La.Code Crim.Proc. art. 215.1.
As these facts demonstrate, the officers had grounds to reasonably suspect that Cole was engaged in a narcotic transaction. Complaints of concerned citizens and informants, together with their experience in such matters, led them to believe that Cole was collecting money for the sale of narcotics from the group assembled in the project courtyard. His hurried trip to the apartment to obtain the narcotics fell into the familiar pattern of a narcotic transaction.
If policemen are to serve any purpose at all in their efforts to detect and prevent crime by being out on the streets, they must be able to take a closer look at challenging situations as they are encountered. Washington v. United States, 130 U.S.App.D.C. 144, 397 F.2d 705 (1968).
The apartment where the heroin was found was searched with the express approval and consent of Cole. His defense to this search and seizure is based upon the testimony of his wife. She testified that she and Cole had been separated for four years, and he did not live in the apartment which she occupied with their two minor children. According to her testimony, Cole lived elsewhere, although he came to the apartment often to visit the children. The record also establishes that Cole had given the address of this apartment as his residence on a previous unrelated occasion, and that when he was booked for the instant offense he furnished that address as his residence. Moreover, when the officers requested permission to search his apartment, he led them to the rooms where the heroin and guns were found. This evidence, which is all the record furnishes, makes the defense contention that Cole had no right to give consent to search the apartment subject to considerable doubt.
Assuming arguendo that this was not Cole's apartment and that he did not have the right to consent to the search, the question is: Does the alleged illegality of the search affect his rights? The Constitution protects a person against unreasonable searches and seizures. It protects a person's proprietary interest, Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), together with the right to privacy resulting from the mutual use of property by persons generally having joint access or control for most purposes. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).
Thus, if Cole had none of these rights in the apartment no interest or right of his was abridged. "It is well settled that the Fourth Amendment to the United States Constitution protects people, not places. It is the individual's reasonable expectation of privacy that our society values and the constitution protects." State v. Hines, 323 So.2d 449 (La.1975); La.Const. Art. I, § 5 (1974).
To counter the foregoing proposition the defense argues that despite the fact that Cole had no right to privacy in the apartment to be protected, the apartment was searched without the consent of his wife who did have such a right. The search was, therefore, illegal. The defense argues Cole *1070 was adversely affected by that search and seizure and therefore has standing under Article I, Section 5, of the 1974 Constitution of Louisiana to raise its illegality.
Pretermitting a decision of this proposition, the contention is answered by the fact that Cole consented to the search. Thus, whether he had a right to give that consent or not, he cannot now take the position that this consent has no effect. To say the least it denies him the right to invoke the illegality of the search, if it was such, since, insofar as he is concerned, by consenting he waived the right to object. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921); State v. Sears, 298 So.2d 814 (La.1974); State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968); State v. Page, 251 La. 810, 206 So.2d 503 (1968).
For the reasons assigned, the ruling of the trial court is annulled and set aside, and the case is remanded for further proceedings not inconsistent with the reasons assigned herein.
DIXON, J., concurs.
NOTES
[*] Dixon, J., was of the opinion that a rehearing should be granted.