353 So.2d 1019 (1977)
STATE of Louisiana
v.
Thomas J. ABRAM.
No. 60244.
Supreme Court of Louisiana.
December 19, 1977.
Rehearing Denied January 27, 1978.
*1021 Thomas W. Davenport, Jr., Davenport, Files, Kelly & Marsh, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant Thomas John Abram was charged by bill of information with the possession of marijuana with intent to distribute. He was found guilty after trial by jury and sentenced to serve eight years at hard labor and to pay a fine of $2500.00.
During the afternoon of Saturday, July 24, 1976, defendant registered at the Rodeway Inn in West Monroe, Louisiana. He registered in the name of his brother (Samuel L. Abram) and gave his father's address rather than his own, but he gave the correct description of his car, its license tag and his own driver's license number. After paying the rental for one night's stay, he was given the key to Room 130. Defendant then went to the room and placed there some personal toilet articles and a large plastic garbage can containing approximately seventeen pounds of marijuana, a scale and some plastic bags. He rested in his room for several hours, then returned to the motel desk and requested the occupancy of the room for more than the one night. He was told by the desk clerk that the room was available and that he could pay the additional rental when he checked out. The clerk marked the registration card "layover," pursuant to motel policy. The defendant then left, apparently not returning to the motel until the early morning hours of Tuesday, July 27, 1976.
On the afternoon of Monday, July 26, 1976, Gene Porter, a traveling salesman and frequent guest at the Rodeway Inn, arrived at the motel and requested his usual room for the nightRoom 130. The desk clerk checked the registration cards and found that Room 130 was occupied, so she assigned Mr. Porter to Room 140. She then noticed that Room 130 was marked "clean and vacant" on the maid's list. Apparently believing the room to be vacant, she then changed the registration card and gave Mr. Porter a key.
Upon entering Room 130, Mr. Porter noticed the garbage can left by the defendant, removed its lid, and examined its contents. He then called the desk and asked the clerk to summon the police. Officer Roy Dale Smith of the West Monroe Police Department arrived at Room 130 shortly thereafter and was invited into the room by Mr. Porter. The lid was not on the can when Officer Smith entered the room. After seeing the contents of the can and believing the substance to be marijuana, the officer contacted the Morehouse-Ouachita Parish Strike Force. Narcotics agents from that special investigative unit had Mr. Porter assigned to a different room and then set up a surveillance of Room 130. The surveillance *1022 was discontinued around midnight that night and the officers reentered the room and took possession of the garbage can.
One and a half or two hours after the surveillance was terminated, the defendant returned to Room 130, discovered that his property was missing and went to the desk to complain. The clerk called the police. When the police arrived, the defendant was arrested. At the time of the arrest, the defendant was in possession of a plastic bag containing ten marijuana cigarettes.

Assignment of Error No. 1
This assignment was taken to the trial court's denial of a motion to suppress evidence seized in the motel room. Defendant characterizes the warrantless search and seizure as one based on the consent of Mr. Porter and argues that his consent is not sufficient to justify the invasion of the defendant's privacy.
It is now well settled that it is people and their privacy, not specific places, that are subject to the protection of the Fourth Amendment. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Fearn, 345 So.2d 468 (La.1977); State v. Cole, 337 So.2d 1067 (La.1976); State v. Nine, 315 So.2d 667 (La.1975). Article 1 § 5 of the La.Const. of 1974 provides similar protection.[1] Searches conducted without the prior approval of a judge or magistrate are constitutionally impermissible unless there is applicable one of the "well delineated" exceptions. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Lain, 347 So.2d 167 (La. 1977); State v. Hearn, 340 So.2d 1365 (La. 1976).
Consent to search, one of these exceptions, may well be explained in terms of the expectation of privacy. A person who consents to a search clearly could not be heard to complain of the violation of his privacy. Similarly, the invasion of privacy may be justified by the consent of ". . . a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); see Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); State v. Johnson, 343 So.2d 155 (La.1977). In these circumstances, a person's expectation of privacy is severely limited by the joint dominion or authority over the property. The question presented in the instant case, therefore, is whether the defendant's expectation of privacy was violated by the search of his possessions.
In Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), a similar issue was presented. In Stoner police officers, armed with probable cause to arrest the defendant, but not with a search warrant, approached the night clerk of the hotel in which the defendant was staying, and requested admission to the defendant's room. The clerk consented, went to defendant's room with the officers, and unlocked the door. The search conducted by the officers produced evidence used at trial. The United States Supreme Court, in discussing this violation of the defendant's rights, stated:
"It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, and not the night clerk's nor the hotel's. It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent. It is true that the night clerk clearly and unambiguously consented to the search. But there is nothing in the record to indicate that the police had any basis whatsoever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner's room.
". . .

*1023 "No less than a tenant of a house, or the occupant of a room in a boarding house, McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. That protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel. It follows that this search without a warrant was unlawful. . . ." 376 U.S. at 489-90, 84 S.Ct. at 893.
The court, however, recognized that the defendant's expectation of privacy was not absolute:
"It is true, as was said in Jeffers, that when a person engages a hotel room he undoubtedly gives `implied or express permission' to `such persons as maids, janitors or repairmen' to enter his room `in the performance of their duties.' [United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59] 342 U.S. at 51, 72 S.Ct. at 95, 96 L.Ed. 59. But the conduct of the night clerk and the police in the present case was of an entirely different order.. . ." 376 U.S. at 489, 84 S.Ct. at 893.
In the present case, as in Stoner, the defendant had rented a motel rooma place of public accommodation. As in Stoner, his expectation of privacy would render a search instigated and conducted by police solely on the consent of an employee unconstitutional. However, this expectation of privacy does not preclude the validity of the search and seizure conducted under the peculiar facts of this case.
The defendant, in taking a room at a motel, could reasonably expect maintenance personnel to enter the room. By leaving the room unattended for forty-eight hours without prepayment of rental, the defendant might also run the risk of the motel management concluding that he had "skipped." This fact, compounded with the risk of good faith clerical errors in multi-unit motels, limits the expectation of privacy reasonably accorded the defendant. It is significant to note that the defendant's possessions were kept in an ordinary covered garbage can, not generally associated with personal belongings, rather than in a suit case or other container readily identifiable as belonging to another.
In the present case, there is no indication that the rental of defendant's room to Mr. Porter was anything except a good faith error on the part of motel personnel. Mr. Porter rented the room, occupied it as a good faith possessor,[2] clothed with the apparent dominion and control over its contents. His act of opening the garbage can and looking inside was not unreasonable, because conceivably the can was supplied by the motel for the convenience of its guests. Mr. Porter, on his own initiative, had the police called. When the officer arrived, he was invited into the room by its apparent occupant and viewed the contents of the then open garbage can.
Defendant's expectation of privacy did not protect against the possibility of an accidental reassignment of the room, thus the entry of Mr. Porter was not violative of the defendant's constitutional rights. Searches conducted by private persons do not fall within the protection of the Fourth Amendment. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); United States v. Winbush, 428 F.2d 357 (6th Cir. 1970) cert. den. 400 U.S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157; State v. Hutchinson, 349 So.2d 1252 (La.1977). The search conducted by Mr. Porter was not violative of the Fourth Amendment.[3] Further the *1024 search of the defendant's garbage can did not, under the circumstances of this case, infringe upon an area of his privacy protected by Art. 1 § 5 of the La.Const. of 1974.
The fact that the police did not immediately remove the marijuana is of no significance; the seizure was effectively executed when the police took control and dominion of the room and its contents.[4] The salutary policy underlying the exclusionary rule, that of discouraging governmental overreaching and unwarranted intrusion upon reasonable expectations of privacy, would not be served by the suppression of this evidence.
The assignment is without merit.

Assignment of Error No. 2
The defendant contends that the trial court erred in ruling that the confession made after his arrest was free and voluntary. According to the defendant, the garbage can contained not only marijuana but also a bank bag with $1500.00 cash. This money was never located, and there is no proof of its existence other than the testimony of the defendant. During the trial, in a hearing to determine the voluntariness of the confession held outside the presence of the jury, the defendant testified that he was told by the police after his arrest that he would have to make a statement before they would investigate the missing money. The defendant contends that this inducement renders the statement involuntary.
The defendant was forty-two years old (at the time of sentencing) and had a high school education. He does not deny that he was advised of his rights at the time of the arrest, nor does he deny that he could have been informed of his rights on other occasions. The arresting officer testified that he advised the defendant of his rights at least three times prior to the statement. The trial judge's ruling on the admissibility of the confession was not error. State v. Payne, 338 So.2d 682 (La.1976).
The assignment is without merit.

Assignment of Error No. 3
Defendant contends that the trial court erred in admitting into evidence photocopies of the motel registration cards and a transcript of the recorded confession without the introduction of the original cards and the recording of the confession.
The unavailability of both items was adequately explained. The makers of the items testified at trial to establish the accuracy of the reproductions. While the photocopy of the registration form depicted only a portion of the form, it was all that was available and the maker was capable of testifying as to the contents of the missing portions. Secondary evidence was admissible. *1025 R.S. 15:437; State v. Simmons, 328 So.2d 149 (La.1976); cf. State v. Auzenne, 305 So.2d 507 (La.1975).

Assignment of Error No. 4
The defendant contends that the trial court erred in refusing to advise the jury of the possible penalty for the crime charged and of the possible penalties for the responsive verdicts.
Under Louisiana jurisprudence, it is not error for the trial court to refuse a requested charge on a discretionary penalty. See State v. Hodges, 349 So.2d 250 (La.1977); State v. Milby, 345 So.2d 18 (La. 1977); State v. Prater, 337 So.2d 1107 (La. 1976); State v. Chatman, 337 So.2d 1106 (La.1976); State v. Unzueta, 337 So.2d 1102 (La.1976).
This assignment is without merit.[5]

Assignment of Error No. 5
Defendant contends that his sentence of eight years imprisonment and fine of $2500.00 is excessive and in violation of Art. 1 § 20 of the La.Const. of 1974.
The sentence imposed in the present case does not violate any rights afforded the defendant by Art. 1 § 20. The trial judge at sentencing noted that the defendant was a fourth offender. Additionally, the large amount of contraband involvedapproximately seventeen poundsindicates the severity of the offense committed. The sentence was not excessive. See State v. Progue, 350 So.2d 1181 (La.1977); State v. Bryant, 347 So.2d 227 (La.1977).
For the reasons assigned, the defendant's conviction and sentence are affirmed.
NOTES
[1] The protection afforded by Art. 1 § 5 of our Constitution is not, however, merely coextensive with that afforded by the Fourth Amendment. See State v. Hutchinson, 349 So.2d 1252 (La.1977); cf. State v. Overton, 337 So.2d 1201 (La.1976).
[2] Cf. C.C. 3451.
[3] In Barnes v. United States, 373 F.2d 517 (5th Cir. 1967), the owner of a motel in which the defendant stayed overnight searched a travel bag left in the room. He became suspicious of its contents and contacted the police. The Fifth Circuit Court of Appeals held that the search did not involve governmental action and thus was not illegal within the meaning of the Fourth Amendment.

In United States v. Blanton, 479 F.2d 327 (5th Cir. 1973), the defendant's bag was left unclaimed for several hours in an airport baggage area. An airline employee opened the bag in order to determine the owner. When he opened an attache case found inside the bag, he saw what appeared to be a pistol and silencer. The bag was closed by the employee and the police and federal authorities were notified. Before the officers arrived, the defendant appeared at the airport to claim the bag whereupon he was asked to remain until the federal authorities arrived. When the federal officer appeared, he was given the bag. He opened it and saw the silencer and gun. In response to the defendant's argument that a new, second search was made when the federal officer opened the bag, the Fifth Circuit stated:
". . . the initial search was made by a private person and the events which later transpired did not constitute a separate or additional search which could be equated with a search proscribed by the two-part test of the Fourth Amendment: (1) an unreasonable search (2) by a state or federal officer. It is not clear from our opinion in the Barnes case [Barnes v. United States, 373 F.2d 517 (5th Cir. 1967)] whether the bag was left open by the hotel owner or reopened by the police but this happenstance is insufficient to convert an otherwise private search into an unreasonable official search in the immediate circumstances which were present there and which are present here. The Barnes opinion states that the motel owner made `it', meaning the bag, available to the officers. That is precisely what happened in the instant case." United States v. Blanton, 479 F.2d 327, 328.
See also United States v. Lamar, 545 F.2d 488 (5th Cir. 1977); United States v. Maxwell, 484 F.2d 1350 (5th Cir. 1973).
[4] See the discussion of United States v. Blanton, 479 F.2d 328 (5th Cir. 1973), in note 3, supra.
[5] In the writer's view the jury has a right to know, and should be informed of the possible penalties. This view, however, is contrary to that of a majority of this court.