451 So.2d 1139 (1984)
STATE of Louisiana
v.
Philip FURINO.
No. CR83-752.
Court of Appeal of Louisiana, Third Circuit.
May 16, 1984.
Rehearing Denied June 14, 1984.
*1140 John Di Giulio, Baton Rouge, for defendant-appellant.
Robin Rhodes, Carrol L. Spell, Jr., Donald Landry, Asst. Dist. Attys., Lafayette, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
DOMENGEAUX, Judge.
The defendant, Philip Furino, was charged by bill of information with the crimes of possession with intent to distribute marijuana, a violation of La.R.S. 40:966(A), possession with intent to distribute cocaine, a violation of La.R.S. 40:967(A), and possession with intent to distribute methaqualone, a violation of La. R.S. 40:967(A). The defendant filed a motion to suppress; a hearing was held on March 10, 1983, and the motion was denied. On May 12, 1983, the defendant changed his plea of "not guilty" to "guilty,"[1] waived the legal delays for sentencing, and was sentenced to eight years at hard labor on each count to run concurrently. Defense counsel then requested reservation of rights on the motion to suppress under State v. Crosby, 338 So.2d 584 (La.1976).
FACTS
On November 7, 1982, at about 1:00 P.M., the head housekeeper of the Days Inn Motel opened the door to Room 248 and saw a large quantity of suspicious-looking vegetable matter on the floor. This entry was made pursuant to a standard hotel chain policy of checking each room which was not rented for the next day, even if, as here, a "Do Not Disturb" sign was hung on the door. She alerted the manager, who viewed the room for himself before closing the door and calling the police. Less than an hour later, Officer Layburn accompanied the manager to view the room. Layburn then called Detective Paul Green who arrived between 1:30 P.M. and 1:45 P.M. to view the room. At this time photographs were taken of the room. Around 4:00 5:00 P.M. Green left the motel to obtain a search warrant. Detective Michael Lavergne arrived at approximately 5:00 P.M.; he went to the room and saw (through the open door) the plant material on the floor. Soon the officers observed two suspects returning to the room. The officers immediately placed the room under surveillance. At this time the officers observed one of the suspects retrieve a gram scale from his car, and return to the room. A registration check was made on the car and it was discovered that the Florida license plate did not properly match the suspects' car. Around 5:30 P.M. both suspects left the room. Detective Lavergne expressed concern that the surveillance might be discovered, and the two suspects were arrested forthwith. A short time later, the search warrant arrived, and the officers seized and inventoried the contents of the room, which included large quantities of marijuana, methaqualone, cocaine, diazepam, and dilaudid.
ASSIGNMENT OF ERROR
The defendant contends that the trial court erred in not granting his motion to suppress, since the search of the defendant's motel room was conducted without a *1141 search warrant and outside the exceptions to the warrant requirement.
EXCEPTION TO THE WARRANT REQUIREMENT
The principal issue in the instant case focuses on the entry into defendant's room by law enforcement officers.
Both the Fourth Amendment to the U.S. Constitution and La. Const. Art. I, § 5 protects persons from unreasonable searches and seizures. Searches conducted without a valid search warrant are constitutionally impermissible unless one of the "narrowly defined" exceptions is applicable. Katz v. U.S., 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Ludwig, 423 So.2d 1073 (La.1982); State v. Abram, 353 So.2d 1019 (La.1977), cert. denied, 441 U.S. 934, 99 S.Ct. 2058, 60 L.Ed.2d 663 (1979).
Consent to search, one of these exceptions to a warrantless search, may be explained in terms of the expectation of privacy. A person who consents to a search clearly could not be heard to complain of the violation of his privacy. Similarly, the invasion of privacy may be justified by the consent of "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." In these circumstances, a person's expectation of privacy is severely limited by the joint dominion or authority over the property which reduces the applicable constitutional protection. U.S. v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Abram, supra.
The defendant cites the case of Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) for the proposition that a warrantless police search of the defendant's hotel room cannot be justified by consent of a hotel employee. In that case, the Court, in reversing the defendant's conviction, recognized that the guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures, and that this protection cannot be made to depend upon the unfettered discretion of a hotel employee. However, the Court also noted that the defendant's expectation of privacy was not absolute since a lessee of a hotel room gives implied or express permission to such persons as maids, janitors, and repairmen to enter the room in performance of their duties.
In State v. Abram, supra, the defendant left a garbage can containing marijuana in a motel room which he had rented and left unattended for 48 hours without rental prepayment. Due to a good faith clerical error, the room was reassigned to another motel guest who discovered the marijuana and called the police. In affirming the trial court's ruling denying the defendant's motion to suppress, the Court stated:
"The defendant, in taking a room at a motel, could reasonably expect maintenance personnel to enter the room. By leaving the room unattended for forty-eight hours without prepayment of rental, the defendant might also run the risk of the motel management concluding that he had `skipped.' This fact, compounded with the risk of good faith clerical errors in multi-unit motels, limits the expectation of privacy reasonably accorded the defendant. It is significant to note that the defendant's possessions were kept in an ordinary covered garbage can, not generally associated with personal belongings, rather than in a suitcase or other container readily identifiable as belonging to another.
In the present case, there is no indication that the rental of defendant's room to Mr. Porter was anything except a good faith error on the part of motel personnel. Mr. Porter rented the room, occupied it as a good faith possessor, clothed with the apparent dominion and control over its contents. His act of opening the garbage can and looking inside was not unreasonable, because conceivably the can was supplied by the motel for the convenience of its guests. Mr. Porter, on his own initiative, had the police called. When the officer arrived, he was invited into the room by its apparent *1142 occupant and viewed the contents of the then open garbage can.
Defendant's expectation of privacy did not protect against the possibility of an accidental reassignment of the room, thus the entry of Mr. Porter was not violative of the defendant's constitutional rights. Searches conducted by private persons do not fall within the protection of the Fourth Amendment. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); United States v. Winbush, 428 F.2d 357 (6th Cir.1970) cert. den. 400 U.S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157; State v. Hutchinson, 349 So.2d 1252 (La.1977). The search conducted by Mr. Porter was not violative of the Fourth Amendment. Further the search of the defendant's garbage can did not, under the circumstances of this case, infringe upon an area of his privacy protected by Art. 1 § 5 of the La. Const. of 1974.
The fact that the police did not immediately remove the marijuana is of no significance; the seizure was effectively executed when the police took control and dominion of the room and its contents. The salutary policy underlying the exclusionary rule, that of discouraging governmental overreaching and unwarranted intrusion upon reasonable expectations of privacy, would not be served by the suppression of this evidence."
At 1023-1024 (footnotes omitted).
In the instant case the defendant's expectation of privacy does not extend to the housekeeper's routine entry, since he could reasonably expect (and gives implied permission for) maintenance personnel to enter the room. The housekeeper was merely following standard operating procedure for a multi-unit motel. There is no indication that the entry into defendant's room was a departure from management policy. Defendant's expectation of privacy was not protected against the possibility of a routine room check and tally, thus the initial entry was not violative of defendant's constitutional rights. Searches conducted by private individuals do not fall within the purview of the Fourth Amendment.
This was not a case of the complicity of a hotel employee with the police to violate the defendant's expectation of privacy (as was the case in Stoner). Moreover, under the rationale of Abram, the initial search was conducted by a private citizen; thus, neither that search nor subsequent police searches violated the defendant's constitutional rights. In sum, the policy underlying the exclusionary rule, i.e., to discourage unwarranted intrusion upon reasonable expectations of privacy, is not furthered by the suppression of this evidence.
This assignment of error lacks merit.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Following the standard of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Court explained to the defendant his constitutional right of trial by jury, right to confront his accusers, and right against self incrimination. The Court was satisfied that the defendant fully and completely understood his constitutional rights and the charges pending against him. The Court further found that the defendant intelligently waived his rights and therefore the Court allowed him to enter the guilty pleas.