GUIDRY, Judge.
The defendant, Daniel DeBlanc, was charged by bill of information with posses *1289 sion of marijuana with the intent to distribute, a violation of La.R.S. 40:966. On September 2, 1988, the trial court held a hearing on the defendant’s motions to suppress and release property, and the state’s motion for forfeiture of the seized property. The trial judge denied the defendant’s motions and ordered the seized property to be forfeited to the state. On October 24, 1988, the defendant pled guilty to possession of marijuana, reserving his right to appeal the ruling on the motion to suppress and the ruling regarding the seized contraband. See State v. Crosby, 338 So.2d 584 (La.1976). Thereafter, the defendant was sentenced to a suspended six month sentence and he was placed on supervised probation for two years. The defendant is appealing the trial judge’s rulings of September 2,1988, based on eight assignments of error.
PACTS
In March of 1988, Sergeant Lawrence Bergeron of the Lafayette Parish Sheriff’s Office Canine Division received information from an informant, the defendant’s 16-year-old son Dusty DeBlanc, that the defendant was selling drugs out of his house and driving around without a driver’s license. Officer Bergeron attempted to verify this information because the defendant’s son was a first time informant whose veracity was not yet proven. The officer ran a check on the defendant through the police computer and confirmed that the defendant had not had a driver’s license since 1983. Over the next couple of months, the officer watched the defendant’s house on five to six occasions. The officer observed traffic going to the house, remaining for around ten minutes and leaving, a pattern consistent with the sale of controlled dangerous substances. The officer recognized some of the individuals coming and going as persons who had been previously arrested on drug charges.
On May 1, 1988, at approximately 8:30 p.m., the officer received a message from Dusty that the defendant had left the house driving a 1987 300ZX Nissan. Dusty stated that he last observed his father driving down Ambassador Caffery Highway in Lafayette. According to Dusty, the elder DeBlanc was on his way to get some marijuana to sell to a customer. Sergeant Ber-geron drove past the defendant’s house to confirm that the car, which was registered to Ms. Loretta Richard, the woman with whom the defendant was living, was gone. Bergeron had been told by Dusty that she had left with the defendant to pick up the marijuana. After confirming that the car was not at the house, the officer ran another computer check on the defendant to reconfirm that the defendant had no driver’s license.
Sergeant Bergeron then proceeded to a location on Ambassador Caffery to look for the defendant as Dusty had informed him that his father would probably be returning that way. When one of the other canine handlers, Deputy Tony Fontenot, heard Deputy Bergeron over the radio, he came to where Sergeant Bergeron was parked on Ambassador Caffery to assist him. As the two deputies were talking, Sergeant Ber-geron noticed the defendant drive by their location. Until this moment, the officer had not seen the defendant driving during his two months of surveillance. Bergeron verified the license plate number on the car and stopped the car once he confirmed the defendant was actually the party driving. Deputy Fontenot assisted in the traffic stop.
Upon being stopped, the defendant quickly exited his vehicle. Sergeant Bergeron got out of his vehicle with his dog, Canine Remington, and requested that the defendant produce his driver’s license. The defendant told the officer that he had left it at home. The officer told the defendant he knew he had not had a driver’s license since 1983, to which the defendant replied the officer had probably checked everything out. Ms. Richard remained in the car during this conversation. As Deputy Fon-tenot watched the defendant, Sergeant Ber-geron with Canine Remington proceeded to secure the vehicle.
As Sergeant Bergeron and Canine Remington approached the passenger’s side of the vehicle, Canine Remington, a highly *1290 trained narcotics dog, began scratching on the side of the door. The officer pulled the dog away and asked the woman to exit the car. She told him to please stop the dog from scratching her car. The officer held a flashlight on her, and as she got out of the car he could see, in plain view, her purse, open on the floorboard, with what appeared to be marijuana in it. When the officer went up to her, she stated that she had never been in trouble. The officer informed the defendant and Ms. Richard that the dog had become alert and reacted as he had been taught to do when he detected the scent of drugs he had been trained to detect. The dog had made such detections in more than 200 cases in four and one-half years with the officer and had placed first nationally in vehicle searches. The officer advised them of their constitutional rights and requested their permission to search the car. They both gave their consent to search the car. The officer removed two ziplock bags of marijuana from the purse and Canine Remington found another bag located between the console and the seat. When the officer asked how much marijuana was there, Ms. Richard replied approximately $600.00 worth.
When the officer asked if they had any more drugs, Ms. Richard admitted there were some more drugs at the house where she and her children resided along with the defendant. She gave the officers permission to go to the house and conduct a search. As a result of the latter search, the officers found three small bags of marijuana in a tin can. The officers also seized a cigarette roller, a marijuana cigarette butt on the table, and a scale and scissors from a cabinet. Sergeant Bergeron seized the 1987 300ZX Nissan car.
During the hearing on September 2, 1988, evidence was introduced showing that there was a total of 131 grams of marijuana seized, 111 grams of which were taken from the car. Deputy John Bourque of the Lafayette Parish Sheriff’s Office testified that marijuana was priced from $100.00-$125.00 per ounce on the streets in Lafayette. The officer testified that there was around $390.00 worth of narcotics found in the car if it were broken down into the bags as found or $250.00 in large quantities if the possessor was a user. However, if the possessor was a seller, the officer testified that the marijuana could have been packaged for sale as five to six lids (ounces) on the streets. Based on this testimony, the trial judge found that the value of the narcotics in the vehicle was over $500.00 and that the defendant intended to use it for purposes of commercial sale. The court ordered the car to be forfeited.
ASSIGNMENT OF ERROR NO. 1
The defendant urges that the trial court erred in ruling that the stop of the defendant’s automobile was constitutional.
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1, as well as both the federal and state constitutions. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Chopin, 372 So.2d 1222 (La.1979). The right to make an investigatory stop must be based upon reasonable cause sufficient to cause them to suspect the particular individual detained of past, present, or imminent criminal conduct. State v. Andrishok, 434 So.2d 389 (La. 1983). It is well settled that reasonable cause to justify an investigative stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual’s right to be free from governmental interference. State v. Keller, 403 So.2d 693 (La. 1981).
Sergeant Bergeron had received information from the defendant’s son in March of 1988 that the defendant was driving without a license and selling drugs. The officer verified at that time, that the defendant did not have a driver’s license. On May 1, 1988, the officer received another call from the defendant’s son that the defendant had driven off to get some drugs. The officer checked to make sure that the car was not at his house and then the officer verified that the defendant still *1291 did not have a driver’s license. When the officer saw the defendant driving past him, he had probable cause to stop the defendant for driving without a license.
Despite the defendant’s contentions to the contrary, canine officers have the power to issue tickets for traffic violations. Although the defendant further complains the stop was illegal because Deputy Fonte-not did not know why the defendant was being stopped, Deputy Fontenot was not the officer who effected the stop. Sergeant Bergeron was the arresting officer. It was the knowledge that Sergeant Ber-geron had that determined whether the stop was constitutional. Under the facts and circumstances of this case, Sergeant Bergeron had sufficient knowledge to legally stop the defendant.
This assignment lacks merit.
ASSIGNMENTS OF ERROR NOS. 2 AND 3
The defendant next asserts that the trial court erred in finding that the warrantless searches of the defendant’s car and home were constitutional.
The Fourth Amendment of the United States Constitution and Article 1, § 5 of the Louisiana Constitution protects people against unreasonable searches and seizures. Terry v. Ohio, supra; State v. Bel-ton, 441 So.2d 1195 (La.1983). A search conducted without a warrant issued upon probable cause is normally per se unreasonable, subject only to a few specifically established and well delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Raheem, 464 So.2d 293 (La.1985). The defendant argues that the warrantless searches were not justified.
The issue involved in this case is whether the defendant and Ms. Richard validly consented to the search of the car. A valid consent to search is a well recognized exception to the requirement of a valid search warrant. State v. Owen, 453 So.2d 1202 (La.1984); State v. Mitchell, 360 So.2d 189 (La.1978). When the state seeks to rely upon consent to justify a warrant-less search, it must demonstrate that the consent was given freely and voluntarily without coercion. State v. Wilson, 467 So.2d 503 (La.1985). The voluntariness of the defendant’s consent is a question of fact to be determined by the trial judge .under the facts and circumstances surrounding each case and the trial judge’s factual determinations are entitled to great weight on appeal. State v. Ossey, 446 So.2d 280 (La.1984).
As Sergeant Bergeron reached the passenger side of the car with Canine Remington, Canine Remington became alert and began to scratch at the car, a signal he used when he detected narcotics he had been trained to detect. While Ms. Richard was exiting the car, the officer inadvertently spotted, in plain view, what appeared to be marijuana in her purse. The officer informed the defendant and Ms. Richard of their constitutional rights, and requested their permission to search the car. They both agreed to allow the officer to search the car. There was no evidence or suggestion that they were coerced, forced, threatened, or mistreated in any manner. The trial court did not err when it found that defendants consented to a search of the car.
The next issue is whether Ms. Richard could validly consent to a search of the defendant’s home which led to the discovery of more marijuana and drug paraphernalia. Any person who possesses common authority or has a sufficient relationship to the premises or effects sought to be inspected can freely and voluntarily consent to the search of such premises. State v. Bodley, 394 So.2d 584 (La.1981); State v. Cormier, 438 So.2d 1269 (La.App. 3rd Cir. 1983), writ granted under the caption State v. Owen, 443 So.2d 599 (La.1983), affirmed under the caption State v. Owen, 453 So.2d 1202 (La.1984). Ms. Richard lived with the defendant in the house which was searched. Therefore, she had the authority to consent to a search of the premises. The record indicates that Ms. Richard was not coerced. Thus, the trial court did not err in ruling that the search of the defendant’s home and the Richard car was constitutional.
*1292 ASSIGNMENT OF ERROR NO. 4
The defendant next urges that the trial court erred in precluding the defendant from introducing certain testimony of Deputy Fontenot which was proffered. The defendant maintains that the testimony of Deputy Fontenot was pertinent cross-examination concerning the legality of the stop, i.e., the personal knowledge of the officer; what he observed that would establish cause to stop the defendant; whether there was discernible danger or other circumstances necessitating the removal of the passenger; why he was at the scene; and, his traffic activities with the canine division.
Although the defendant called Deputy Fontenot as a defense witness, the trial court allowed the defendant to cross-examine him. A witness may be cross-examined on any matter relevant to the ease. However, the scope and extent of cross-examination rests largely within the discretion of the trial judge and his rulings will not be disturbed on appeal in the-absence of an abuse of discretion. State v. Garrison, 400 So.2d 874 (La.1981).
As already stated, the personal knowledge of Deputy Fontenot surrounding the defendant’s stop was not pertinent to the stop or the eventual search. It was the personal knowledge of the arresting officer, Sergeant Bergeron, that was relevant in this case. Thus, the trial court did not abuse its discretion.
This assignment of error lacks merit.
ASSIGNMENTS OF ERROR NOS. 5, 6, 7 AND 8
The defendant finally argues that the trial court erred in finding the Nissan 300ZX car to be contraband and ordering its forfeiture. The State, on the other hand, insists that its peremptory exception of no right of action should be granted because the defendant was not the “owner” of the car within the meaning of La. R.S. 32:1550.
The trial judge signed the documents to seize the 1987 300ZX Nissan on May 2, 1988. The State, thereafter, instituted forfeiture proceedings under La.R.S. 32:1550. On June 24, 1988, the defendant filed a motion to release the car, alleging that it belonged to him. On August 31, 1988, the State filed a peremptory exception to the defendant’s motion to release on the ground that the defendant had no right of action in respect to the property as he was not the registered owner. The car’s registration papers and purchase agreement named Loretta Richard as the legal owner of the car. During the forfeiture hearing on September 2, 1988, the defendant produced evidence that he had paid for the car which was registered and titled in the name of Ms. Richard.' Ms. Richard was present at the hearing and represented by counsel. The trial judge ordered the car to be forfeited but made no specific ruling on the State’s peremptory exception. Ms. Richard has not appealed the decision forfeiting the car. The State has reurged its exception on appeal.
The issue presented is whether a person, who is not the legal owner of forfeited property, has the right to appeal from an adverse ruling in a forfeiture proceeding.
An action can only be brought by a person having a real and actual interest in the cause of action which he asserts, except as otherwise provided by law. La.C.C.P. art. 681; Lambert v. Donald G. Lambert Const. Co., 370 So.2d 1254 (La. 1979). When a party has no right of action or no interest to institute a suit, the other party may object by filing a peremptory exception. La.C.C.P. art. 927(5). Article 2163 of the Louisiana Code of Civil Procedure provides that an “appellate court may consider the peremptory exception filed in that court, if pleaded prior to a submission of the case for a decision, and if proof of the exception appears of record”.
The State filed its peremptory exception on August 31, 1988, two days before the forfeiture hearing on September 2, 1988. The evidence presented at the forfeiture hearing showed that the defendant was not the owner of the car. An “owner” within Title 32 of the Louisiana Revised Statutes is a person who holds legal title to a vehicle. La.R.S. 32:1(45). Ms. Richard held *1293 the legal title to the 1987 300ZX Nissan. Therefore, the defendant does not have a right of action or interest to challenge the forfeiture on appeal. As the defendant is not the legal owner of the 1987 300ZX Nissan, there is no need to address his final four assignments of error.
For the reasons stated, the trial court’s rulings on the motions to suppress and forfeiture and defendant’s conviction and the sentence imposed are affirmed.
AFFIRMED.