I LAUNDERS, Judge.
The defendant, Robert R. Jackson, was charged by bill of information with one count of possession of marijuana with intent to distribute, a violation of La.R.S. 40:966; two counts of possession of a Controlled Dangerous Substance (CDS), a violation of La.R.S. 40:967; one count of possession of drug paraphernalia with intent to use, a violation of La.R.S. 40:1033 on July 12, 1994; and one count of knowing and intentional receipt or acquisition of proceeds derived from violation of the Controlled Dangerous Substances law, in violation of La.R.S. 40:1049(D). The defendant appeared in court with counsel and pled not guilty on August 2, 1994. The defendant filed a motion to suppress the evidence on October 18, 1994, which the trial court denied. On March 26, 1994, the defendant withdrew his former plea and entered a Crosby plea of guilty to one count of possession of marijuana with intent to distribute and one count of possession of a Controlled Dangerous Substance, reserving his right |2to appeal the denial of his motion to suppress the evidence. The other four counts were dismissed. The defendant received a sentence of ten (10) years at hard labor on each count, sentences to be served concurrently. The defendant now appeals his conviction and alleges one assignment of error.

ERROR PATENT:

La.Code Crimp art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
In accordance with this article, all appeals are reviewed by this court for errors patent on the face of the record.
La.Code Crimp art. 880 provides that when imposing a sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Thus, we find that the sentence should be amended to reflect that the defendant is given credit for time served prior to the execution of the sentence. See La.Code Crimp art. 882(A). While resentencing is not required; we remand this case and order the district court to amend the commitment and minute entiy of the sentence to reflect that the defendant is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 6/4/94); 640 So.2d 561, writ denied, 94-1455 (La.3/30/95); 651 So.2d 858.
La.Code Crimp art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the ease for resentencing. La.Code Crim.P. art. 921. The three-year ^prescriptive period does not begin to run until the judgment is final under La.Code Crim.P. art. 914 or 922, so prescription is not yet running. The purpose of the notice of Article 930.8(C) is to inform defendant of the prescriptive period in advance; thus, we conclude that the district court should inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.1993).

FACTS

On December 28, 1993, Detective Kip Anthony Judice and a SWAT team went to the home of Vincent Belsito in order to execute an arrest warrant. Upon arrival, the SWAT team went in first to secure the residence. Detective Judice then went through the bedrooms of the home to identify the individuals and observed a marijuana joint in an ashtray in one of the bedrooms. He requested a member from the Metro Narcotics unit to come to the scene to collect the evidence. Detective Dwayne Prejean responded to the call. The defendant, Robert Rocky Jackson, had been staying at the Belsito residence and *662 defendant complied with Detective Prejean’s request to search a second bedroom which he was using. Detective Prejean discovered marijuana in the defendant’s bedroom as well and arrested the defendant. The officers received information that Vincent Belsito had turned himself in to the sheriffs office, and Detective Judice went to the sheriffs office to arrest him and to request his permission to search the remainder of the house. Belsi-to complied, and during the course of the search, the officers discovered more contraband throughout the house. The officers also discovered a locked safe in the carport. Drug dogs were brought to the scene and when they alerted on the safe, the officers seized the safe as evidence. On the following day they received a search warrant for the safe and discovered a substantial amount of contraband, which the defendant seeks to have suppressed.

ASSIGNMENT OF ERROR:

The defendant alleges the trial court was in error in denying the defendant’s Motion to Suppress the Evidence. The defendant first argues the actions of the police exceeded the scope of the arrest warrant for Vincent Belsi-to, the owner of the house. According to the defendant, once the police determined that Belsito was not at the residence, they should have terminated their search.

CONTRABAND DISCOVERED IN EXECUTION OF THE ARREST WARRANT

Detective Kip Anthony Judice of the Lafayette Parish Sheriffs Department and the SWAT team went to the residence of Vincent Belsito in order to execute an arrest warrant for Belsito. Detective Judice testified that after the members of the SWAT team entered the house and secured the people in the residence, he went into the bedrooms to identify the individuals. He stated he observed a hand-rolled cigarette in an ashtray in one of the bedrooms which he suspected from previous experience was a marijuana joint. Detective Judice stated he did not seize the contraband at that time, but instead radioed the Metro Narcotics Division and requested they send an agent to the scene to collect the evidence.
Consequently, we find that the officer did not conduct an illegal search when he went into the bedroom and inadvertently discovered the contraband. See Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); State v. Barrett, 408 So.2d 903 (La.1981).

CONSENT SEARCHES

The defendant next argues the validity of the search of a second bedroom in the home. The bedroom occupied by the defendant and the remainder of the Belsito ^residence was valid as a consent search. The defendant does not refute this argument in his brief.
When a search is made with consent, the state must prove the consent was freely and voluntarily given, as shown by the facts and circumstances of the individual case. State v. Simpson, 629 So.2d 468 (La. App. 3 Cir.1993); State v. Valrie, 597 So.2d 1218 (La.App. 3 Cir.1992), writ denied, 605 So.2d 1113 (La.1992). Consent is a recognized exception to the warrant requirement. State v. Bodley, 394 So.2d 584 (La.1981). Under the United States Constitution, when there has been no illegal detention, the test for the voluntariness to search is the “totality of the circumstances” and courts must examine all the surrounding circumstances to determine whether the consent was voluntary. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Ossey, 446 So.2d 280 (La.1984).
In State v. Furino, 451 So.2d 1139, 1141 (La.App. 3 Cir.), writ denied, 456 So.2d 1017 (La.1984), this court stated:
Consent to search, one of [the] exceptions to a warrantless search, may be explained in terms of the expectation of privacy. A person who consents to a search clearly could not be heard to complain of the violation of his privacy. Similarly, the invasion of privacy may be justified by the consent of “a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.” In these circumstances, a person’s expectation of privacy is severely limited by the joint dominion or *663 authority over the property which reduces the applicable constitutional protection.
Additionally, citing U.S. v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the court in State v. Cody, 446 So.2d 1278, 1286 (La.App. 2 Cir.1984) stated:
The common authority stems not so much from one’s property interests, but rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their numbers might permit the common area to be searched.
|6In the present ease, Detective Dwayne Prejean, an agent from the Metro Narcotics unit, arrived on the scene to collect the evidence Detective Judice had discovered. He testified Detective Judice showed him the marijuana joint in the ashtray. He stated the defendant was advised of his constitutional rights and Detective Prejean requested the defendant’s permission to search a second bedroom in the home which the defendant had been using. Detective Judice testified that they requested the defendant’s permission to search only the bedroom he was using because they believed that was the one room in the house over which the defendant appeared to have control. Defendant was also advised that he had a right to refuse to consent to the search. Detective Prejean discovered contraband in the room and arrested the defendant.
Detective Prejean later discovered that the man whom Detective Judice had initially come to arrest, Vincent Belsito, had turned himself in at the sheriffs office. Detectives Prejean and Judice went there to speak to him; they informed Belsito of the discovery of the drug paraphernalia in his home and requested his consent to search the rest of the house; Belsito complied. They informed him of his right to refuse to give consent.
In light of the above, we find that the officers had valid consent from Belsito and the defendant which justified the warrantless search of the Belsito residence. Both Belsito and the defendant were advised of their rights,, and voluntarily consented to the search of the room occupied by the defendant and the search of the remainder of the house.

SEARCH OF THE SAFE

During the course of the search of the Belsito residence, the officers discovered a locked safe in the carport. Belsito contended that he was unaware of the contents of the safe and that a man named “Ron” had left the safe at his home six months earlier. Detective Prejean contacted the K-9 unit and had them send a dog to the scene. The 17dog alerted on the safe. A second dog was requested and it also alerted on the safe.[1] The officers then seized the safe as evidence and stored it in the evidence facility at the Sheriffs office until they could obtain a search warrant. They applied for and received a search warrant on the following day, after which they searched the safe and discovered in the safe the contraband at issue, and they also discovered other incriminating evidence. The defendant was subsequently charged with one count of possession of marijuana with intent to distribute and one count of possession of a Controlled Dangerbus Substance based on the contraband discovered in the safe, and he pled guilty to these charges. The defendant does not contest his connection to the safe.
The defendant argues that the police should not have seized the safe because they did not have a search warrant or probable cause. The defendant contends the testimony provided regarding the “drug dogs” that alerted on the safe did not establish the requisite probable cause which would have justified the seizure of the safe because there is no testimony in the record that the dogs were certified by any agency, had any training or expertise in evaluating the contents of the safe, and the handlers of the dogs were not called to testify as to the qualifications of the dogs. He urges that courts in this state have recognized that drug dogs should be certified and trained to detect drugs before their actions can be used to establish probable cause. The state, on the other hand, *664 argues the contraband seized from the locked safe was entered into upon good faith upon the basis of a validly issued search warrant based on probable cause.
At the hearing on the motion to suppress, the defendant objected to Detective Preje-an’s testimony regarding the dogs because Prejean had not been qualified as a K-9 officer and the trial court overruled the objection and stated the officer could testify ^regarding the actions of the dogs. Detective Prejean testified the first dog wanted to retrieve something out of the safe and that he did not do this anywhere in the room. He then called a second dog which acted in the same manner. Prejean testified he had worked with the first dog before on about twenty to twenty-five prior investigations and had worked five times previously with the second dog.
Thus, the issue of whether there was sufficient evidence introduced at the suppression hearing of the dogs’ qualifications in drug detection to justify the warrantless seizure of the safe merits consideration. In United States v. Place, 462 U.S. 696, 705-709, 103 S.Ct. 2637, 2644-2645, 77 L.Ed.2d 110 (1983), the United State’s Supreme Court determined that “a ‘canine sniff by a well-trained narcotics detection dog,” was not an unreasonable search under the Fourth Amendment. (Emphasis added). See also, State v. Senegal, 95-796 (La.App. 3 Cir. 12/6/95); 664 So.2d 832. Generally, although courts in this state have not set forth the requirements needed to show that a drug dog is qualified to detect drugs, they have noted the qualifications of drug detection dogs when determining their actions in detecting drugs to be sufficient probable cause for a search. See State v. Gant, 93-2895 (La.5/20/94); 637 So.2d 396, reh’g denied, 93-2895 (La.7/1/94); 639 So.2d 1183 (“drug-certified” dog detected contraband); State v. Dillon, 95-00884 (La. App. 3 Cir. 1/31/96); 670 So.2d 278 (narcotics dog was “trained and certified”); State v. Dickens, 633 So.2d 329 (La.App. 1 Cir.1993) (dog and trainer certified by National Narcotics Detector Dog Association); State v. Rose, 607 So.2d 974 (La.App. 4 Cir.1992), writ denied, 612 So.2d 97 (La.1993) (dog was a “narcotics trained” dog); State v. Philip-poff, 588 So.2d 778 (La.App. 4 Cir.1991) (dogs were “certified narcotics detection dogs”); State v. DeBlanc, 549 So.2d 1287 (La.App. 3 Cir.1989), writ denied, 558 So.2d 599 (La. 1990) (record revealed drug detection dog had detected drugs in more than two hundred cases with the officer and had placed first nationally in vehicle searches).
|9While we have not discovered a ease which directly sets forth the requirements needed to show that a drug dog has been properly trained in the area of drug detection, we find that there was probable cause for the seizure of the safe in this case. Detective Prejean, an agent with Metro Narcotics who has ten years of experience in the narcotics area, testified that he had worked with the dogs in previous drug investigations. Although Detective Prejean did not offer testimony regarding the reliability of these dogs on previous occasions at the suppression hearing, he stated in the affidavit he prepared which was introduced into evidence at the suppression hearing that, in order to obtain the search warrant for the safe, both dogs were certified with the United State Police Canine Association (U.S.P.C.A.) and had been used in prior drug cases. Thus, despite the lack of testimony concerning the qualifications of the detection dogs, we find that based on the information regarding the dogs’ certification in the affidavit which was before the trial court, Prejean’s experience in the field of narcotics, his previous interactions with these specific dogs in prior drug investigations, and the contraband that was previously found throughout the house, there was sufficient probable cause to justify the seizure of the safe.
Even if we were to have found that the lack of testimony regarding the qualifications of the dogs to detect drugs vitiated probable cause to justify the search, we find that the “good faith” exception to the warrant requirement would be applicable in the present ease. In United States v. Leon, 468 U.S. 897, 916, 104 S.Ct. 3405, 3421-3422, 82 L.Ed.2d 677, (1984), the Supreme Court set forth four instances in which suppression of evidence is the appropriate remedy for evidence obtained pursuant to a search warrant:
*665 (1) if the magistrate or judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;
(2) where the issuing magistrate or judge wholly abandoned his detached and neutral judicial role;
| iq(3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and,
(4) where the warrant is so facially deficient, i.e, fails to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.
See also, State v. Varnado, 95-3127 (La.5/31/96); 675 So.2d 268; State v. Loyden, 597 So.2d 156 (La.App. 3 Cir.1992); State v. Ebey, 491 So.2d 498 (La.App. 3 Cir.1986). None of these factors apply to the affidavit in the present ease. Furthermore, in State v. Varnado, 675 So.2d at 270, the court stated:
The reasonableness inquiry under Leon is an objective one which turns on the totality of the circumstances surrounding the issuance of the warrant. Id., 468 U.S. at 922 n. 23, 104 S.Ct at 3420 n. 23. Those circumstances include the overall familiarity of the officer applying for the warrant with the investigation and the degree to which he has participated in the events leading to the search. See Massachusetts v. Sheppard, 468 U.S. 981, 989 n. 6, 104 S.Ct. 3424, 3428 n. 6, 82 L.Ed.2d 737 (1984).
In this case, the officer who applied for the search warrant for the safe, Detective Preje-an, was the officer who searched the Belsito residence and discovered the contraband. The affidavit contained all of the details of the events which took place at the Belsito home, including the attempt to execute the arrest warrant for Belsito,- the discovery of the incriminating contraband in the home, and the positive alerts of the drug dogs on the safe. Furthermore, the affidavit contains an assertion by the officer in good faith that the dogs were certified by the United States Police Canine Association in drug detection and had been used in prior drug cases. Thus, even had we determined that there was not sufficient probable cause for the search, we conclude that the good faith exception to the warrant requirement would have been applicable in the present case.

CONCLUSION

For the foregoing reasons, we find that Detective Judice did not exceed the scope of the arrest warrant when he went into the bedroom seeking Belsito, and | ninadvertently discovered the contraband. Furthermore, we find the officers obtained valid consent from the defendant and Belsito which justified their search of the bedroom occupied by the defendant and the remainder of the Bel-sito residence.
Additionally, we find that there was probable cause for the seizure of the safe based on the previous discovery of contraband, Detective Prejean’s. extensive experience in the field of narcotics, and his history of involvement with the drug detection- dogs used in the present ease in previous drug investigations.
The' conviction of the defendant is affirmed. Finally, we remand this case and direct the trial court to comply with the requirements of La.Code Crim.P. arts. 880 and 930.8.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
THIBODEAUX, J., dissents with written reasons.

. The record does not indicate why a second dog was requested.